Eddie Mitchell TASBY et al.

v.

Dr. Nolan ESTES, General Superintendent, Dallas Independent School District, et al.

Donald E. Curry et al., Intervenors.

No. CA 3–4211–C.

United States District Court,
N. D. Texas,
Dallas Division.

July 20, 1976.

Edward B. Cloutman, III, Mullinax, Wells, Mauzy & Baab, Inc., Sylvia Demarest, Director, Dallas Legal Services Foundation, Inc., Dallas, Tex., Melvyn Leventhal, New York City, Vilma S. Martinez, Mexican American Legal Defense and Educational Fund, Inc., San Francisco, Cal., and Albert H. Kauffman, San Antonio, Tex., for plaintiffs.

Warren Whitham, Spafford, Gay & Whitham, and Mark Martin, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendants.

Robert H. Mow and Robert L. Blumenthal, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, Tex., for Donald E. Curry et al.

N. Alex Bickley, City Atty., Dallas, Tex., for City of Dallas.

James T. Maxwell, pro se.

Martin Frost, Barber & Frost and John W. Bryant, Dallas, Tex., for Dr. E. Thomas Strom et al.

E. Brice Cunningham, L. A. Bedford, Jr., and Fred Finch, Dallas, Tex., for Metropolitan Branches of NAACP.

James A. Donohoe and G. Duffield Smith, Jr., Gardere, Porter & DeHay, Dallas, Tex., for Brinegar et al.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Before the Court is the motion of plaintiffs' attorneys, Sylvia M. Demarest and Edward B. Cloutman, III, for an award of attorneys' fees and expenses incident to the trial and entry of a final order in this school desegregation case.

The history of the desegregation of the Dallas Independent School District (DISD) reveals a long and arduous struggle. No purpose would be served by the recitation of the individual cases that were filed, tried, appealed and reversed subsequent to *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and prior to the filing of the instant case, other than to show that the establishment of a unitary system in the DISD was not accomplished on a purely voluntary basis. Rather, the minorities in the DISD found it necessary to resort to the courts time and again in order to secure their constitutional right to equal educational opportunity and a unitary school system.

This case was filed on October 6, 1970. Pending final trial there were numerous hearings on motions to dismiss, motions for discovery, and in one instance on application to enjoin the DISD's plans for site selection and construction of new schools.[1] Trial was commenced on July 12, 1971, and a final order was entered August 2, 1971.

Both parties appealed from this 1971 order, plaintiffs contending that the remedy ordered was inadequate, and the DISD contending that the finding that vestiges of a dual school system remained was not supported by the evidence. Finally on July 23, 1975, the Fifth Circuit Court of Appeals affirmed the finding that the DISD was not operating a unitary school system in 1970–71, but reversed and remanded the student assignment portion of this Court's 1971 Order.

During this past year the parties have pursued the case with utmost diligence, expending a great deal of time on motions, planning and preparation, and hearings. These activities culminated in the entry of a Memorandum Opinion and Order on March 10, and the Final Order on April 7, 1976. The NAACP, which was allowed to intervene in the case on August 25, 1975, as well as several of the named plaintiffs acting on their own and without the advice of their counsel, have filed notices of appeal with the Fifth Circuit from April 7, 1976, final order.

This abbreviated history is recited merely to indicate that this case has been complicated and prolonged, has involved substantial preparation of the factual and the legal issues both in 1970–71 and in 1975–76, and has involved a great deal of time in court as well as outside. In the historical context of this case and the DISD's conduct with regard to school desegregation since 1954, it is clear that the services of the plaintiffs' attorneys, Sylvia Demarest and Edward Cloutman, have been necessary and even essential in bringing the DISD into compliance with the constitutional requirement of operating a unitary system, and in securing for the community the benefits arising from a school system which provides equal educational opportunity for all students.

Section 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617 (Supp.1973),[2] authorizes a federal court to award reasonable attorneys' fees in a school desegregation case where a final order has been entered, the litigation is necessary and plaintiffs were the prevailing party. In construing this statute, the Supreme Court in *Northcross v. Board of Education of the Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) ruled that:

> [the successful plaintiff] should ordinarily recover an attorney's fee unless special

---

1. An interim appeal resulted from the Court's failure to enjoin the DISD, with reversal and stay being granted by the Fifth Circuit.

2. This statute provides:
Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

circumstances would render such an award unjust.

In *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court further held that, where the case is pending on appeal on the effective date of the statute, i. e., July 1, 1972, the district court can and should award attorneys' fees for services rendered prior to the effective date as well as for services rendered afterwards, unless such an award would cause "manifest injustice."

■ This case was clearly pending on appeal on July 1, 1972. The DISD contends, however, that only where the propriety of an attorney's fee award is pending before the court at the effective date of the statute can there be retroactive application of the statute in issue. The Court is of the opinion that the plaintiffs' prayer for attorneys' fees in the Original Complaint of 1970, coupled with the entrance of a Final Order in April, 1976, in which plaintiffs prevailed, provide ample grounds for holding that this case falls within the purview of *Bradley*. See also *Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974) and *Brewer v. School Board of City of Norfolk*, 500 F.2d 1129 (4th Cir. 1974).

■ The DISD suggests next that plaintiffs are not the prevailing party in this litigation. The Court finds this assertion untenable. Plaintiffs prevailed on the liability issue when the Court held on July 16, 1971, that the DISD was not operating a unitary school system. On appeal to the Fifth Circuit from the Court's Order of August 2, 1971, the United States Court of Appeals sustained the plaintiffs' claims and rejected every contention of the DISD other than faculty assignment ratios. Finally, the plan adopted by the Court on March 10, 1976, and Ordered to be implemented on April 7, 1976, and April 15, 1976, incorporated almost every precept proposed by plaintiffs for both student assignment and non-student assignment remedies.

The DISD finally contends that "special circumstances" exist which render an award of attorneys' fees unjust. *Bradley, supra,* 416 U.S. 696, 710, 94 S.Ct. 2006, 40 L.Ed.2d 476; *Northcross, supra,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). The "special circumstances" advanced by the DISD are (1) the existence of the Legal Services Corporation Act of 1974, (2) the purported waiver of the right to attorneys' fees by Legal Services, and (3) the former employment of plaintiffs' counsel by Legal Services. ·These contentions will be discussed in that order in the following paragraphs.

Prior to the passage of the Legal Services Corporation Act of 1974, 42 U.S.C. §§ 2996 *et seq.,* Legal Services was funded pursuant to provisions of the Economic Opportunity Act (EOA) of 1964, 42 U.S.C. § 2701 *et seq.* Neither the EOA, nor any amendments thereto, nor any regulations issued pursuant thereto, prohibited the representation of clients in cases involving desegregation of public schools. Moreover, neither the EOA, nor any amendments thereto, nor any regulations issued pursuant thereto, prohibited the collection of attorneys' fees by grantees under appropriate circumstances. Indeed, the Board of Directors of Legal Services has specifically requested and received authorization from the Office of Economic Opportunity to collect awards of attorneys' fees in cases where a statute, regulation, or contract permits such recovery. Legal Services has previously collected attorneys' fees in school cases as well as in other cases.

■ The Legal Services Corporation Act was signed into law on July 25, 1974; however, it did not become effective until October 15, 1975. This statute clearly contains a prohibition regarding cases relating to the desegregation of elementary and secondary schools and any school system.[3] However,

---

**3.** 42 U.S.C. § 2996f(b)(7) provides in part:

(b) No funds made available by the Corporation under this subchapter, either by grant or contract, may be used—

    \*    \*    \*    \*    \*    \*

(7) to provide legal assistance with respect to any proceeding or litigation relating to the desegregation of any elementary or secondary school or school system.

that prohibition must be read in conjunction with other statements contained in the Act regarding the need to protect the best interests of clients and to adhere to the Code of Professional Responsibility, the Canons of Ethics, and the high standards of the legal profession. See 42 U.S.C. § 2996(6).

After considering these competing provisions of the statute, the Board of Directors of Legal Services passed a resolution on October 15, 1975, recognizing the importance of this case and authorizing the continued expenditure of funds to insure the successful prosecution of the litigation. The Acting Regional Director of Legal Services Corporation, Mr. David A. Gilbert, in response to Legal Services' inquiry regarding the propriety of continued representation of the plaintiff class, stated that such continued representation was permissible. The Corporation's position, based upon the complexity of the case and the close proximity of the up-coming hearings on a remedy, was grounded on the relevant provisions of the American Bar Association's Code of Professional Responsibility and the Canons of Judicial Ethics.

■ It is clear that the initial involvement of Legal Services in this case was permissible, and that the collection of attorneys fees by Legal Services has been permitted by the Board of Directors where allowed by law. In the Court's opinion Legal Services' continued representation of plaintiffs during this past year was also permissible under the circumstances. Accordingly, Legal Services is entitled to attorneys' fees until March 31, 1976.

■ The DISD's argument with regard to waiver of Legal Services' right to attorneys' fees is not well-taken. It is clear that the waiver of this right is exclusively within the province of the Board of Directors of Legal Services. The only time the Board addressed itself to this issue, it approved the collection of attorneys' fees where permitted by law.   .

■ This Court was presented in 1971 with a request for attorneys' fees by Doug Larson, who had been with Legal Services and had left to go into private practice. The Court ruled that it was improper for an attorney to start out representing a client at a time when he was employed on the basis that he could not charge a fee, and then separate from that service and suggest entitlement to a fee. The Court is of the opinion that the same principle holds true for Ms. Demarest and Mr. Cloutman for the periods prior to July 23, 1975, when they were not employed by Legal Services. The fact that they are willing to donate this time to Legal Services does not change this principle.

However, in view of the Legal Services Corporation Act and the remand, the Court feels it is entirely proper for Mr. Cloutman to receive attorney's fees for his participation in the litigation since July 23, 1975.

The parties have stipulated as to hours spent by Mr. Cloutman and Ms. Demarest from September 25, 1970 to March 31, 1976, and as to a maximum reasonable hourly attorney's fee. Applying the above stated law to the stipulated facts in this case the Court finds that Ms. Demarest and Mr. Cloutman should recover attorneys' fees in the following amounts:

Sylvia M. Demarest      —      1,113.2 hours ... $66,792.00
(to be paid to Dallas Legal Services
  Foundation, Inc.)

Edward B. Cloutman, III  —       541.9 hours ... $32,514.00

All other requests for attorneys' fees by any party are denied.

■ Also before the Court is the DISD's motion to set aside order taxing costs against defendants and in favor of plaintiffs. The Supreme Court in *Bradley, supra,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) approved the District Court's allowance of the actual expenses of litigation, which included expenses for travel, hotel accommodations, restaurant meals, expert witnesses, investigation assistance, office supplies, transcripts (including those of depositions), and miscellaneous court fees. These were awarded in addition to

ordinary costs of court, clearly collectable under any set of circumstances by a prevailing litigant. The Court continues to be of the opinion that these expenses were necessary and reasonable costs of litigation in this case. The motion to set aside the order taxing costs is denied.