606 F.2d 128
 John E. HAYCRAFT et al., Plaintiffs-Appellees,
v.
L. J. HOLLENBACH, III, County Judge of Jefferson County,
Kentucky, Intervenor-Appellant,
Board of Education of Jefferson County, Kentucky, et al., Defendants.
 No. 77-3428.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 14, 1979.
Decided Sept. 17, 1979.
 
 Ben J. Talbott, Jr., Middleton, Reutlinger & Baird, J. Bruce Miller, Jefferson County Atty., Edward L. SchoenbaEChler, Louisville, Ky., for intervenor-appellant.
 Thomas L. HogaN, Louisville, Ky., for plaintiffs-appellees.
 Before ENGEL, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 The issue on this appeal is whether the district court abused its discretion in awarding attorneys' fees against appellant L. J. Hollenbach, an intervenor in the Jefferson County, Kentucky, school desegregation case, under § 718 of the Emergency School Aid Act of 1972, 86 Stat. 369, 20 U.S.C. § 1617.
 
 
 2
 We affirm.
 
 
 3
 * In Newburg Area Council, Inc. v. Board of Education of Jefferson County, Kentucky, 489 F.2d 925 (6th Cir. 1973), Vacated and remanded, 418 U.S. 918, 94 S.Ct. 3208, 41 L.Ed.2d 1160 (1974), Reinstated upon remand, 510 F.2d 1358 (6th Cir. 1974), Cert. denied, 421 U.S. 931, 95 S.Ct. 1658, 44 L.Ed.2d 88 (1975), this court directed the district court to remove "all vestiges of state-imposed segregation" from the public school system of Jefferson County, Kentucky. Upon remand for implementation of an appropriate desegregation plan, the district court found the proposals of the principal parties to be constitutionally insufficient and, therefore, implemented its own desegregation plan.
 
 
 4
 Subsequently, appellant sought to intervene in the litigation in his official capacity as County Judge of Jefferson County, on behalf of "all the people of Jefferson County," pursuant to Fed.R.Civ.P. 24(a) and (b). His motion for intervention was made for the specific purpose of offering an alternative desegregation plan for Jefferson County public schools. The district court, over the strenuous objection of appellees, granted appellant conditional intervention, limited to offering and defending an alternative desegregation plan.
 
 
 5
 On April 22, 1976, appellant filed his plan with the district court.[1] The matter was set for hearing on May 4, 1976. At the hearing, appellant offered expert testimony to explain the method, purpose, and scope of the plan. After consideration of the testimony, the district court rejected the alternative desegregation plan of appellant as constitutionally infirm[2] and, thereafter, dismissed him as an intervening party in a memorandum opinion dated May 18, 1976.
 
 
 6
 Appellant filed a timely appeal from the dismissal of the district court on the ground that his desegregation plan was not constitutionally defective, and on the further ground that he had been improvidently dismissed as an intervening party. Upon the motion of appellees, this court dismissed the appeal by an order dated March 11, 1977, pursuant to then Sixth Circuit Rules 8(b) and 9. Haycraft v. Hollenbach, No. 76-2205 (6th Cir., Mar. 11, 1977), Cert. denied sub nom., Hollenbach, Judge v. Haycraft, 434 U.S. 930, 98 S.Ct. 418, 54 L.Ed.2d 291 (1977).
 
 
 7
 On May 10, 1977, appellees moved the district court for an award of attorneys' fees against appellant under 20 U.S.C. § 1617. The district court granted the motion and ordered that appellant pay Thomas L. Hogan, counsel for appellees, a fee of $11,312.50.[3] In granting the order, the district court observed that "such an award should be entered here as (appellees) would have saved countless hours were it not for the intervenor." This appeal followed.
 
 II
 
 8
 As a general rule, each party to a legal dispute is responsible for payment of attorneys' fees incurred prior to or during the litigation, regardless of the outcome of the dispute in the courts. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, this rule may be modified or negated by Congressional enactment. Fleischmann Distilling Corp. v. Maier Brewing Co.,386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Congress has enacted legislation authorizing award of attorneys' fees in a variety of circumstances, Alyeska Pipeline, 421 U.S. at 260-62 & n.33, 95 S.Ct. 1612, some requiring a mandatory award of fees, and others authorizing the award of fees as a matter within the discretion of the courts. See generally Falcon, Award of Attorneys' Fees in Civil Rights and Constitutional Litigation, 33 Md.L.Rev. 379, 392-99 (1973).
 
 
 9
 In § 718 of the Emergency School Aid Act of 1972, Pub.L.No.92-318, 86 Stat. 369, 20 U.S.C. § 1617, Congress provided:
 
 
 10
 Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[4]
 
 
 11
 In assessing attorneys' fees against appellant, the district court concluded that an award of fees was proper under § 1617, to compensate appellees for the "countless hours" spent in opposing the position advanced by appellant. Appellant contends that an award of fees under § 1617 is limited to governmental agencies that have been found to have violated the rights of the plaintiff. Appellant argues that since he was not an original defendant in this action and was not found to have violated appellees' rights, an award of attorneys' fees against him is improper.
 
 
 12
 In determining the circumstances under which fees are to be awarded under § 1617, the parties against whom fees may be assessed, and the discretion of the court in making such an award, we must first look to the language of the statute.
 
 
 13
 As a prerequisite to an award of attorneys' fees, § 1617 requires that there be a final order entered against a local educational agency (or a State or the United States or any agency of these governments), Northcross v. Board of Education of Memphis City Schools, 489 F.2d 19, 20 (6th Cir. 1973), Cert. denied, 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974), in a proceeding necessary to bring about compliance with the law, Norwood v. Harrison, 410 F.Supp. 133, 138 (N.D.Miss.1976), Appeal dismissed, 563 F.2d 722 (5th Cir. 1977).
 
 
 14
 Nothing in the language of § 1617 limits the scope of its application, nor have we found anything in the legislative history that supports the narrow construction of the section urged by appellant. While § 1617 requires that there be a final order directed against a local educational agency, nowhere does it limit the class of persons, entities, or parties against whom the award of fees may be assessed. Armstrong v. O'Connell, 416 F.Supp. 1325, 1333 (E.D.Wis.1976).
 
 
 15
 To the contrary, § 1617 is to be applied broadly to encourage individuals who have been injured by racial discrimination to seek appropriate judicial relief. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Mid-Hudson Legal Services, Inc. v. G & U, Inc., 578 F.2d 34, 37 (2d Cir. 1978).[5] An award of attorneys' fees under § 1617 is not based on a defendant's intent or purpose, Norwood,410 F.Supp. at 141, nor does the prevailing party need to demonstrate "bad faith" on the part of his opponent under this section, Aspira of New York, Inc. v. Board of Education of City of New York, 65 F.R.D. 541, 543-44 (S.D.N.Y.1975). Rather, a statutory award of fees is predicated on a policy that such an award will enable an aggrieved plaintiff to seek vindication of important personal and public rights. Nadeau v. Helgemoe, 581 F.2d 275, 280 (1st Cir. 1978); Pickett v. Milam, 579 F.2d 1118, 1121 (8th Cir. 1978).
 
 
 16
 Once the requirements of § 1617 are met, the district court may, in the exercise of its discretion, Keyes v. School District No. 1, Denver, Colorado, 439 F.Supp. 393, 402 (D.Colo.1977), award attorneys' fees to the "prevailing party," Tasby v. Estes, 416 F.Supp. 644, 647 (N.D.Tex. 1976). However, the Supreme Court has stated that "if other requirements of (§ 1617) are satisfied, the successful plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render an award unjust.' " Northcross v. Board of Education of Memphis City Schools, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202 (1973).
 
 
 17
 It cannot be doubted that appellees satisfy the requirements of § 1617. This protracted litigation, involving four appeals to this court, was a proceeding necessary to bring the Jefferson County School system into compliance with the fourteenth amendment. Appellees became the prevailing party, insofar as appellant Hollenbach is concerned, when the district court rejected his desegregation plan and dismissed him as an intervenor.[6] That appellant was not a principal defendant in the litigation, although a factor to be considered by the court, is not determinative of the propriety of an assessment of attorneys' fees against him. The alternative desegregation plan proposed by appellant imposed a substantial barrier to the realization of the full constitutional rights of appellees. By prevailing on this issue, appellees advanced the public interest as well as their personal rights. Nadeau, 581 F.2d at 278-79 (allowing attorney's fees where plaintiffs prevailed on a "significant issue" even though not prevailing in the entire action).
 
 
 18
 An award of fees under § 1617 may be reversed only upon a finding that the district court abused its discretion. We conclude that the district judge, who participated in the litigation from its inception and who is uniquely aware of the role and impact of appellant in the controversy, did not abuse his discretion in assessing attorneys' fees against appellant.
 
 
 19
 Appellant also relies upon Chance v. Board of Examiners, 70 F.R.D. 334 (S.D.N.Y.1976), as authority for denying an award of attorneys' fees against him. In Chance, the district court refused to assess fees against an intervenor, the Council of Supervisors and Administrators of the City of New York, Local No. 1 (CSA), in civil rights litigation challenging examinations used to select principals and other supervisors in the public school system. CSA participated in the litigation as an Amicus curiae and for a "brief period" it was granted intervenor status. As to the former period, the court declined to assess attorneys' fees against an Amicus. As to the latter period, the court concluded that it could not award fees on the ground that § 1617 applied to public, not private, parties.
 
 
 20
 Chance is distinguishable from the present case. Appellant intervened in the desegregation litigation is his official capacity as an elected representative of the people of Jefferson County, Kentucky. Appellant's role was not as an Amicus curiae. He was granted full rights of participation on the issue of a proper desegregation plan. Additionally, this court granted appellant participation rights in our review of the district court's desegregation plan. Cunningham v. Grayson, 541 F.2d 538 (6th Cir. 1976), Cert. denied, 429 U.S. 1074, 97 S.Ct. 812 (1977).
 
 III
 
 21
 A federal court, in the exercise of its inherent equitable powers, Sprague v. Ticonic National Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), may award attorneys' fees whenever overriding considerations of justice require it. Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Thus, it is clear that counsel fees may be awarded to a prevailing party where his opponent has acted in "bad faith." Alyeska Pipeline, 421 U.S. at 258-59, 95 S.Ct. 1612. Bad faith has been defined broadly to include acts of "obdurate obstinacy," Monroe v. Board of Commissioners of City of Jackson, Tennessee, 453 F.2d 259, 263 (6th Cir.), Cert. denied, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333 (1972); Davis v. School District of City of Pontiac, Inc., 374 F.Supp. 141, 145 (E.D.Mich. 1974), or conduct that has compelled the plaintiff to litigate recognized legal rights clearly owed. Bradley v. Richmond School Board, 416 U.S. 696, 706, 94 S.Ct. 2006 (1974); Huecker v. Milburn, 538 F.2d 1241, 1245 n. 9 (6th Cir. 1976); Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494, 500 (4th Cir. 1963). We conclude that the award of fees against appellant is also justified under this equitable exception to the no-fee rule.
 
 
 22
 Appellant intervened in this litigation for the purpose of offering a significantly restricted school desegregation plan. This alternative desegregation plan, which did not comply with the mandate from this court in Newburg Area Council, Inc., supra, was rejected by the district court as insufficient on its face. On the appeal following appellant's dismissal from the litigation, this court dismissed that appeal as so manifestly "unsubstantial as not to need further argument." It cannot be gainsaid that in interposing his desegregation plan, appellant caused the district court and appellees to expend substantial time and energy litigating an issue that had already been resolved by the prior mandate of this court. See also Cato v. Parham, 293 F.Supp. 1375, 1378 (E.D.Ark.), Aff'd, 403 F.2d 12, 16 (8th Cir. 1968). Accordingly, an award of fees in the present case can be justified on the ground that appellant's intervention amounted to obstinacy in resisting appellees' realization of their clearly defined legal rights. See also Clark v. Board of Education, 369 F.2d 661, 671 (8th Cir. 1966).
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The basic elements of the plan proposed by appellant were summarized by him:
 (1) Those schools that were victims of direct illegal state action were to be redistricted to reflect, as closely as possible, the racial makeup of the entire school system.
 (2) Attendance zones of all other schools in the system were to be drawn in such a manner as to produce "as much integration as possible on a neighborhood basis."
 (3) Schools not found to be segregated purposely were to remain neighborhood schools. Children from these schools who were bused during the school year 1975-76 were to be given the option of continuing to attend the school to which they had been transferred. Moreover, any student had the right to transfer "where such a transfer would have an integrative effect."
 (4) There were to be established a number of specialty schools (e.g. magnet schools) "in such manner and place as to encourage and improve the integrative distribution of students on a voluntary basis." Principals of all schools were to design programs that "would draw students of that race otherwise under-represented."
 
 
 [2]
 Appellant called Professor James Coleman of the University of Chicago, chief architect of his alternative desegregation plan, as an expert witness to explain and defend the plan. During cross-examination of Professor Coleman the following colloquy took place:
 
 
 Q164
 Under your plan, how does the plan eliminate racially identifiable black schools?
 
 
 A
 The plan does not eliminate racially identifiable black schools, and I think no plan that is stable can do so, nor do I think it is proper
 
 
 Q165
 (Interrupting) Objective?
 
 
 A
 I think it's not a proper objective, because I think it's racially discriminatory
 THE COURT: Now, that's right where I step in, because I have been told by the Sixth Circuit that it is a feasible goal, and to that extent I am to destroy racial identity in the black schools in Jefferson County, Kentucky.
 Now, I want you to tell me, if you maintain that the plan espoused by you will affect that result at Brandeis.
 THE WITNESS: The plan that I espouse I think will not make Brandeis into a non-racially-identifiable school.
 THE COURT: You are very candid, and I appreciate it.
 THE WITNESS: Thank you.
 MR. HOGAN: Your Honor, at this point we would like to renew our motion to dismiss, if they are going to concede that this plan will not follow the judicial mandate as directed to you by the Sixth Circuit, in that it will retain racially identifiable schools.
 Upon re-direct examination, Professor Coleman was permitted to explain his previous testimony:
 
 
 Q167
 You are not implying with respect to the answer that you gave to the Court then, that from the standpoint of removal of racial identification of the schools, your plan is inferior to some other plan; is that correct?
 
 
 A
 No. I'm saying that neither my plan, or any existing plan, or any other plan that I know would remove racial identifiability of a school that had been predominantly black, in a ghetto area
 After hearing the testimony of Professor Coleman, the district court stated:
 Gentlemen, as I see, and I recognize the legitimacy of your arguments, Mr. Talbot, I recognize the sincerity of Judge Hollenbach's assertions, but I am just overwhelmed by the fact that the assertions he asks do not meet the requirements of me by the Sixth Circuit.
 
 
 [3]
 Appellant does not dispute the amount of the fee or that it reasonably represents the time counsel spent in opposing the alternative desegregation plan
 
 
 [4]
 Section 1617 was enacted as § 718 of the Emergency School Aid Act of 1972, which in turn was approved as part of the Educational Amendments of 1972, Pub.L.No.92-318, 86 Stat. 235, 369
 It appears there was little discussion of § 718 in either House of Congress. The committee and conference reports are virtually devoid of any analysis of the attorneys' fees provision. See H.R.Rep.No.554, 92nd Cong., 1st Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, p. 2462; S.Rep.No.604, 92d Cong., 2d Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, p. 2595; Conf.Rep.No.798, 92d Cong., 2d Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 2608, 2668.
 
 
 [5]
 In considering an award of fees, we may consult related attorneys' fees statutes and case law. Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Northcross v. Board of Education of Memphis City Schools, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)
 
 
 [6]
 Appellees were the prevailing party in the underlying desegregation litigation when this court determined that a dual school system had existed in Jefferson County, Kentucky, and had not been dismantled, and we directed the district court to eliminate "all vestiges of state-imposed segregation." Newburg Area Council, 489 F.2d at 932; 510 F.2d at 1359. Subsequently, in Cunningham v. Grayson, 541 F.2d 538 (6th Cir. 1976), Cert. denied, 429 U.S. 1074, 97 S.Ct. 812, 50 L.Ed.2d 792 (1977), this court approved the school desegregation plan adopted by the district court, and implemented in September 1975, pursuant to this court's writ of mandamus. Newburg Area Council v. Gordon, 521 F.2d 578 (6th Cir. 1975)