524 F.Supp. 1214 (1981)
Edward L. KIRKLAND, et al., Plaintiffs,
v.
The NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, et al., Defendants,
and
Albert Ribiero and Henry L. Coons, Intervenors-Defendants,
and
Dennis Fitzpatrick, et al., Intervenors-Defendants.
No. 73 Civ. 1548(MEL).
United States District Court, S. D. New York.
October 29, 1981.
*1215 Jack Greenberg, Charles Stephen Ralston, O. Peter Sherwood, Judith Reed, New York City, for plaintiffs.
Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Judith Gordon, Asst. Atty. Gen., New York City, of counsel.
Rowley & Forrest, Albany, N. Y., for intervenors-defendants; Richard R. Rowley, Albany, N. Y., of counsel.
LASKER, District Judge.

I.
Plaintiffs in this action successfully challenged the legality of Civil Service examination 34-944, utilized by the New York State Department of Correction for promotions to the position of Correction Sergeant, on the ground that it discriminated against black and Hispanic candidates in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §§ 1981 and 1983. On April 1, 1974, after a six-day trial, the examination was held unconstitutional, the defendants were enjoined from making appointments based on the examination's results, the plaintiff class was certified, and plaintiffs were awarded reasonable costs, including attorneys' fees. Kirkland v. New York State Department of Correctional Services, 374 F.Supp. 1361 (S.D.N.Y.1974). At that time, decision was deferred on the extent of affirmative relief to be accorded.
On April 22, 1974, Albert M. Ribiero and Henry L. Coons moved to intervene as parties defendant. They were provisional Sergeants who would have been appointed permanent Sergeants based on their performance on the examination but for the previous order of the court. They contended *1216 that a portion of the affirmative relief being considered, the appointment of persons according to a ratio designed to correct the effects of defendants' unconstitutional practices, would violate intervenors' constitutional right to be free from discrimination on the basis of race. On July 15, 1974, Ribiero and Coon's motion to intervene was granted but their motion to represent the class of all persons who passed the examination was denied.
On July 31, 1974, a decree was entered which, inter alia, provided that interim appointments (prior to the development of a valid examination) to the position of Correction Sergeant (Male) be made upon application to the court in the ratio of one class member for every four promotions and mandatorily enjoined defendants permanently (after the development of a valid examination) to make all appointments according to the same ratio until the combined percentage of black and Hispanic persons in the rank of Correction Sergeant equalled the combined percentage of blacks and Hispanics in the rank of Correctional Officer (Male).
Defendants appealed from all portions of the decree. Ribiero and Coon joined defendants' appeal and presented to the Court of Appeals the additional argument that the complaint should have been dismissed for failure to join them as indispensable parties. The Court of Appeals affirmed the decree except as to the provision that appointments to be made in ratios according to race after the development of a court-approved, job related examination, a provision which the court found constituted "constitutionally forbidden reverse discrimination." Kirkland v. New York State Department of Correctional Services, 520 F.2d 420, 429 (2d Cir.) reh. denied, 531 F.2d 5 (1975). The Court of Appeals did, however, affirm the provision that appointments be made according to the designated ratios on an interim basis. In reliance on the supervening decision in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Court of Appeals also reversed the award of attorneys' fees.
On April 19, 1976, we entered an order directing the administration of an interim selection procedure and providing for appointments in the ratio of one minority member for every three non-minority members until the percentage of minority Sergeants equalled the percentage of black and Hispanic officers as of the date the examination was administered. The intervenors' motions before this court for a stay of the April 19th order and before the Court of Appeals to vacate the original judgment were unsuccessful. Ribiero and Coon's claims were thereafter mooted because, pursuant to the interim selection procedures, they were appointed as Sergeants.
Pursuant to the development of a new, permanent criterion-valid examination as directed by our orders, examination 36-435 was administered in December, 1978. Subsequently, a new set of intervenors, Dennis Fitzpatrick et al., moved for an injunction against use of the test results. In September, 1979, plaintiffs and defendants moved the court to approve utilization of the test results and the intervenors filed a third-party complaint, contending that the award of a 250 point differential to the scores of all black and Hispanic candidates according to EEOC guidelines deprived the intervenors of their rights under the equal protection clause and that the examination was subjective in violation of New York Civil Service law. Plaintiffs' motion to dismiss the intervenors' complaint was denied. In January, 1980, summary judgment was granted to plaintiffs and defendants, on a finding that the 250 point differential was legally permissible and professionally valid. 482 F.Supp. 1179. The intervenors appealed, and the Court of Appeals affirmed. Kirkland v. New York State Department of Correctional Services, 628 F.2d 796 (2d Cir. 1980), cert. denied, 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981).

II.
Plaintiffs contend that, since the intervenors interjected themselves into this litigation on the side of the defendants and *1217 thereby increased the time and cost which plaintiffs had to expend in order to vindicate their rights, the intervenors should be responsible for attorneys' fees as if they were defendants.[1]
The intervenors respond that an award of attorneys' fees against them in the circumstances would be inconsistent with Congress' intent in enacting 42 U.S.C. § 1988, which they view as assuring that persons asserting good faith constitutional claims not be assessed attorneys' fees if they do not prevail. The intervenors emphasize that the procedural posture of the case should not be determinative and that it has never been alleged or held in this litigation that the intervenors themselves discriminated against plaintiffs. Their entry into the case, they argue, was solely for the purpose of asserting their own constitutional rights to be free from discrimination based on race, and in fact they only asserted their rights against the State defendants. In this context, intervenors contend, they should be liable to plaintiffs for attorneys' fees only if their claim were frivolous, vexatious, or brought for harassment purposes. They argue that any other rule would unreasonably deter persons in similar positions from asserting their rights. They emphasize that their claims were in fact brought in good faith, noting that Ribiero and Coon's position with respect to appointment quotas was substantially vindicated by the Court of Appeals' decision that permanent appointment quotas violated the intervenors' rights. Moreover, they assert that the challenge to the 250 point differential presented by the Fitzpatrick intervenors raised an issue of first impression.
Plaintiffs reply that, under Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the good faith of the intervenors is irrelevant to the determination whether plaintiffs are entitled to an award under § 1988. In addition, plaintiffs contend that there are no special circumstances which would warrant a denial of fees in this case.

III.
The threshold issue is whether parties to a case asserting in good faith their own constitutional rights may be taxed with attorneys' fees liability to the prevailing plaintiffs under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. Like the controversy over affirmative remedies for civil rights violations, the facts here reflect a conflict between parties each of whom has justifiable reasons to believe that its position is meritorious. On the plaintiffs' side, they have had to expend greater resources to gain the relief to which they were constitutionally entitled because of the intervenors actions in this case and thus present a claim which, on its face, is the type of claim encompassed by § 1988. On the other hand, the intervenors reasonably believed that the institution of a quota or a score differential based on race violated their constitutional right to be treated without consideration to race, and their entry into this suit sought only to vindicate their own perceived constitutional rights. We agree with the intervenors that it would violate Congressional intent to tax them with attorneys' fees in the circumstances of this case.
The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, provides in relevant part:
"... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or in any civil action or proceeding by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
As the Act has been construed, a prevailing plaintiff in a civil rights action is ordinarily *1218 entitled to recover attorneys' fees as a "private attorney general", absent special circumstances which would make such an award unjust. Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); Mid-Hudson Legal Services, Inc. v. G & U, Inc., 578 F.2d 34 (2d Cir. 1978); see also Zarcone v. Perry, 581 F.2d 1039 (2d Cir. 1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). On the other hand, plaintiffs asserting constitutional claims which are ultimately rejected are not ordinarily required to pay their opponents' attorneys' fees unless their claim is frivolous, unreasonable or groundless, in order to assure that parties are not unduly deterred from bringing good faith constitutional claims. Hughes v. Rowe, 449 U.S. 5, 11, 101 S.Ct. 173, 177, 66 L.Ed.2d 163 (1980); Roadway Express, Inc. v. Piper, supra; S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), U.S.Code Cong. & Admin. News 1976, p. 5908.
In the present case, the plaintiffs "prevailed" under the Act by successfully demonstrating the unconstitutionality of the examination and their entitlement to affirmative relief, despite the fact that they did not prevail on particular issues. Gagne v. Maher, 594 F.2d 336, 340 (2d Cir. 1979). Intervenors, on the other hand, themselves presented good faith constitutional claims and therefore are in a position similar to that of civil rights plaintiffs who have not prevailed. The case thus presents a conflict between the two objectives underlying the Act: encouraging parties to assert good faith constitutional claims by awarding attorneys' fees when such parties prevail and not deterring them by taxing them with their opponents' fees when they are unsuccessful.
In the circumstances of this case, the Congressional intent that civil rights litigants not be deterred from asserting their good faith constitutional claims by the risk of liability for attorneys' fees outweighs the general policy of encouraging civil rights plaintiffs by awarding them attorneys' fees when they prevail. First, the legislative history of section 1988 indicates that Congress did not intend the procedural posture of the parties to be determinative, Senate Rep. No. 1011, 94th Cong., 2d Sess. p. 4, n. 4, and thus the fact that good faith constitutional claims were presented by parties who were intervenor-defendants is of no weight. As the court noted in Harper v. Mayor and City Council of Baltimore, 359 F.Supp. 1187, 1218 (D.Md.1973), intervenors in this context are not the actors in the constitutional deprivation:
"Though the individual white firemen who intervened in this suit were beneficiaries of the discriminatory practices of defendants, they did not have the authority in and of themselves to alter the aspects of the entrance and promotion procedures which are the basis for relief."
These observations apply to intervenors here. They were functionally plaintiffs.
Moreover, unless the law on the particular constitutional issues in question is settled, such intervenors cannot be viewed as mere obstructionists to the vindication of plaintiffs' claims. Unlike the intervenors in the cases relied on by plaintiffs, Moten v. Bricklayers, Masons and Plasterers, 543 F.2d 224 (D.C.Cir.1976) and Haycraft v. Hollenbach, 606 F.2d 128 (6th Cir. 1979), the intervenors here were not pursuing claims which violated plaintiffs' clearly established constitutional entitlements. To the contrary, the intervenors' claims were vindicated by the Court of Appeals with respect to the permanent remedial quotas which had been ordered, and the validity of the 250 point differential was a matter of first instance when presented to the court.
Since the intervenors here were neither actors in the constitutional violation nor obstructionists in the vindication of plaintiffs' rights, they are entitled to the same encouragement as any other party presenting good faith constitutional claims. Such a determination does not compromise the policy of encouraging "private attorneys general" by awarding them attorneys' fees. It simply results from a set of circumstances in which, in effect, there are two sets of "plaintiffs" each of which has brought claims in good faith. Furthermore, even if *1219 it were argued that the denial of an award of attorneys' fees to plaintiffs against intervenors in this type of case might serve incrementally to reduce the incentive for "private attorneys general" to bring civil rights actions, such litigants can still expect to recover the substantial portion of their fees from the defendants who actually denied them their constitutional rights, and accordingly the effect on their financial incentive is marginal at worst. On the other hand, forcing intervenors to bring their constitutional claims only at the risk of becoming liable for their opponents' fees if they do not prevail may substantially deter such intervention by persons with competing constitutional claims. The law would not be well served by such a result for, especially in the context of the development of constitutional doctrine and remedies, it is incumbent on the court to consider all the competing interests at stake.
Plaintiffs' motion for an award of attorneys' fees from the intervenors is denied.
It is so ordered.
NOTES
[1] Plaintiffs and defendants reached a settlement of plaintiffs' motion for attorneys' fees and thus only plaintiffs' request to recover attorneys' fees from intervenors is considered here.