**AKRON CENTER FOR REPRODUCTIVE HEALTH, et al., Plaintiffs,**

v.

**CITY OF AKRON, et al., Defendants,**

**Francois Seguin, M.D. et al., Intervening Party Defendants.**

**No. C78–155A.**

United States District Court, N.D. Ohio, E.D.

June 18, 1984.

Louis Jacobs, American Civil Liberties Union, Columbus, Ohio, for plaintiffs.

Steven Bell, Patricia C. Ambrose, Akron, Ohio, for defendant City of Akron.

Alan Segedy, Akron, Ohio, for defendant intervenors.

## ORDER

DOWD, District Judge.

The Court has before it the motion of plaintiffs' counsel for an award of attorney's fees following plaintiffs' successful prosecution of this § 1983 action.

Plaintiffs' counsel first sought an award of attorneys' fees in October, 1979. By an order dated February 22, 1980, Judge Contie deferred decision on that fee application pending the resolution of the appeal of the case on the merits. The Supreme Court affirmed the judgment on the merits in favor of the plaintiffs on June 15, 1983. *See City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 406, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) affirming in part and reversing in part 651 F.2d 1198 (6 Cir.1981) affirming in part and reversing in part 479 F.Supp. 1172.

Following the Supreme Court's decision, plaintiffs renewed their application for attorneys' fees on July 15, 1983. The Court conducted an evidentiary hearing on the application on August 22, 1983.[1]

Upon review of the arguments and briefs of counsel, the Court finds that the issues raised fall into three broad categories. Initially, the parties seek a determination of whether plaintiffs' counsel shall receive any award of fees. If the Court determines that a fee award is appropriate, the parties raise a number of issues surrounding the legal standards which the Court will apply in determining the reasonableness of the fee application. Finally, once these legal issues are resolved, the parties raise factual challenges to the reasonableness of the fee applications. This opinion will focus on the first category of issues— whether a fee award is appropriate in this case.

## I.

Plaintiffs' claim for attorneys' fee in this case is governed by the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. In relevant part, that statute provides that:

> The Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

*Id.* Under the terms of this statute, the appropriateness of an attorneys' fee award is left to the discretion of the trial court. While the award of attorneys' fees is discretionary, Congress and the appellate courts have provided significant guidance on the standards which a trial court should use in exercising its discretion on this issue.

As noted by one recent trial court, the legislative history and judicial interpretation of the statute demonstrate that the Court's discretion to deny fees is narrow. The Senate report states:

> ... A party seeking to enforce the rights protected by the statute's covered by [§ 1988], if successful, "should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust."

1976 U.S.Code Cong. and Ad.News 5908 at 5912. The report cited the Supreme Court decision in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) with approval as stating the standard for "special circumstances." Since enactment of the statute,

---

1. The hearing was conducted on an expedited basis at the request of Stephan Landsman, chief counsel for the plaintiffs, in view of the impending departure of Mr. Landsman to begin a one- year appointment as a visiting professor of law in England. The parties have filed a series of briefs relating to the fee application since the hearing.

the Supreme Court has once again affirmed the "special circumstances" standard. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). In that case, the Court stated that:

> The court's discretion to deny a fee award to a prevailing plaintiff is narrow. Absent "special circumstances", ... fees should be awarded.

*Id.* at 68, 100 S.Ct. at 2033. (citations omitted). In view of this standard, the Court must find "special circumstances" to justify a denial of an attorney fee award.

## II.

Both the city-defendants [2] and the intervenor-defendants [3] have raised legal arguments that special circumstances render an award of attorneys' fees inappropriate in this case. The city-defendants argue that the arrangement between plaintiffs, Mr. Landsman, and Cleveland State University (CSU)—Mr. Landsman's employer—violates state law. The City, therefore, contends that special circumstances preclude an award of attorneys' fees in this case because this arrangement violates public policy. Even if the Court rejects this argument and makes an award of attorneys' fees, the intervenor-defendants argue that their status as intervenors constitutes special circumstances, and that they should not be held responsible for the fee award.

## A.

■ The city-defendants first argue that plaintiff's representation arrangement violates the state constitutional prohibition of the use of public funds for private purposes. In relevant part, Ohio's constitution provides that

> The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever....

Ohio Constitution, Article VIII, § 4. In the City's view, the plaintiffs, which include private corporations, have not paid for their representation in this action, and therefore, have received "credit" from CSU and the State of Ohio. The city-defendants have not provided any case authority in which an Ohio state court has found such a relationship to violate the state constitution. In the absence of such authority, and in view of the Court's finding that the alleged misuse of state funds is, at best, attenuated, the Court will not conclude that the fee arrangement in this case violates the state constitution.

The city-defendants also argue that Mr. Landsman's participation in this action violated the CSU by-laws regulating extramural employment by professors. Under the CSU by-laws, certain procedural steps must be taken before a professor may provide his services or use university materials for extramural employment. Mr. Landsman's involvement in this case, however, was related to his duties in the law school's clinical program. While the city-defendants have presented a substantial argument that Mr. Landsman may have crossed the line between his participation in this matter as part of his clinical duties and participation as extramural employment, the Court believes that consideration of this matter is best left for the judgment of CSU and state auditing officials. The Court, therefore, will not declare that Mr. Landsman's activities violated the CSU by-laws.

Under these circumstances, the Court does not find a violation of either the state constitution or the university by-laws in Mr. Landsman's participation in this action. The Court, therefore, does not find that the arrangement between the ACLU, CSU, and Mr. Landsman is violative of public policy. Accordingly, the Court does not find that the representation arrangement constitutes

---

**2.** The city-defendants include the City of Akron, Mayor John S. Ballard, Director of Public Health, Dr. C. William Keck, and Police Prosecutor Peter Oldham. As Ballard, Keck, and Oldham have been sued in both their individual and official capacities, their successors have been automatically substituted as defendants in their official capacities pursuant to Fed.R.Civ.P. 25(d).

**3.** The intervenor-defendants are Dr. Francois Seguin and Ms. Patricia K. Black.

"special circumstances" justifying a denial of attorneys' fees.

### B.

Consideration of the intervenor-defendants' argument that they should not be required to contribute to an attorneys' fees award must begin with an analysis of their participation in the underlying law suit giving rise to this fee dispute. On April 26, 1978, seven days after the filing of the complaint in this action, intervenor-defendants filed their petition to intervene in this action. In their petition, intervenor-defendants sought leave to represent a number of groups of allegedly interested parties.[4] Plaintiffs opposed the motion. Judge Contie ultimately granted the motion in part and denied the motion in part in an order filed on May 16, 1978. In that order, Judge Contie allowed the intervenor-defendants to intervene "solely in their individual capacity as parents of unmarried minor daughters of child-bearing age." Order at 2. Judge Contie went on to limit intervenor-defendants' participation in this action "to the issues directly effecting the scope of their intervention. By way of example, participation at trial, either by way of direct evidence or cross-examination, shall be limited solely to their claims as parents of unmarried minor daughters of child-bearing age." Id. With regard to any other issues, intervenor-defendants' participation was limited to submission of amicus curiae briefs.

Despite this limited scope of intervention, intervenor-defendants litigated their claims vigorously. They filed nearly 40 documents in the case, including at least 14 to which plaintiffs had to independently respond. Intervenor-defendants took an active role at trial, occasionally requiring the Court to stop their inquiry into areas beyond the permitted scope of intervention. On appeal, intervenor-defendants challenged the district court decision, and fully participated in the proceedings at the Court of Appeals. They also unsuccessfully petitioned the United States Supreme Court for a writ of certiorari and filed briefs in the consolidated appeals of the other parties. Counsel for the intervenor-defendants ultimately argued this case before the Supreme Court on behalf of the city-defendants. While the parties dispute the extent to which the plaintiffs ultimately prevailed, it is undisputed that plaintiffs prevailed on at least some of the issues on which intervenor-defendants participated in the lawsuit.

Based on this record, intervenor-defendants argue that the Court should not require them to contribute to an award of attorneys' fees. Intervenor-defendants argue initially that their status as intervenor-defendants, standing alone, constitutes special circumstances justifying denial of the award. Alternatively, intervenor-defendants argue that there are other special circumstances which support a denial of the application in this case.

Intervenor-defendants initially seek a blanket statement that intervenor-defendants are not liable for attorneys' fees in civil rights actions. The Sixth Circuit, however, has previously approved an award of attorneys' fees against an intervenor-defendant in *Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir.1979). In that case, the Court awarded attorneys' fees against an intervenor-defendant who advocated an alternative desegregation plan for a local

---

4. Dr. Seguin sought leave to intervene on the following basis:

(a) As guardian *ad litem* for unborn children, previable and viable, whose lives, health, rights, and interests are protected through Akron Ordinance No. 160–1978.

(b) As guardian *ad litem* for infants born alive as the result of legal abortion whose lives, health, rights, and interests are protected through Akron Ordinance No. 160–1978. Dr. Seguin and Ms. Black together sought leave to intervene on the following basis:

(a) On behalf of themselves, each of whom as parents of minor daughters of child-bearing age, who are not now married and have never been married, and whose rights as parents are protected by Akron Ordinance No. 160–1978.

(b) On behalf of the class of parents of minor daughters of child-bearing age who are not now married and have never been married, and whose right as parents are protected by Akron Ordinance No. 160–1978.

Petition to Intervene at 1.

school district. In another unpublished decision, the U.S. District Court for the Northern District of Illinois reduced a successful plaintiffs' award of attorneys' fees because they failed to name an intervenor-defendant in the application. *Wynn v. Scott*, No. 75 C 3975 (N.D.Ill. Jan. 11, 1980). None of the cases cited by intervenor-defendants' directly contradict this position.[5]

■ In this case, the Court is of the view that the intervenors voluntarily chose to align themselves with the city-defendants in opposing the relief sought by the plaintiff in this action. As such, they acted in concert with the city-defendants and contributed to the effort required of the plaintiffs to substantiate their position in Court. Under these circumstances, the Court concludes that the intervenor-defendants' status does not preclude an award of attorneys' fees.

Regardless of this conclusion, intervenor-defendants urge this Court to find special circumstances and to deny an award of attorneys' fees in this case. The issue for determination in this case, therefore, is whether intervenor-defendants have presented appropriate special circumstances to support denial of an award of attorney's fees. Intervenor-defendants have raised four arguments which they urge the Court to accept as special circumstances sufficient to deny an award of attorneys' fees.

■ Intervenor-defendants argue that they are not liable for attorneys' fees under § 1988 because they took no actions which violated plaintiffs' constitutional rights; the City, the entity which adopted and enforced the ordinance, was the only party in a position to provide the relief sought by plaintiffs.[6] A number of courts have rejected this argument. In *Haycraft*, the Court rejected this argument characterizing the intervenor-defendants' participation in the lawsuit as presenting a "substantial barrier to the realization of the full constitutional rights of [the plaintiffs.]" *Haycraft v. Hollenbach*, 606 F.2d 128, 132 (6th Cir.1979). This position was developed in more depth in *Vulcan Society of West Chester County v. Fire Department*, 533 F.Supp. 1054, 1062 (S.D.N.Y.1982). In that case, the Court stated that the intervenors'

> efforts imposed substantial costs upon plaintiffs, and plaintiffs prevailed over the unions' opposition on most of the issues involved.... Having chosen to participate as defendants, the unions must be treated as defendants, both to achieve the purposes of the law granting attorneys' fees to prevailing litigants in civil rights litigation, and in order to avoid unfairly imposing upon the other defendants more than their fair share of plaintiffs' fees.

*Id.* at 1062. In view of these authorities, the Court concludes that the intervenor-defendants' inability to provide the relief sought by the plaintiffs in this action does not constitute special circumstances which would support a denial of an award of attorneys' fees.

■ Intervenor-defendants have also argued that they should not be held liable for an award of attorneys' fees because their actions were taken in good faith. They

---

5. The cases cited by intervenor-defendants do not support the proposition that an award of attorneys' fees against intervenor-defendants is barred. In *Planned Parenthood of Memphis v. Alexander*, No. 78–2310 (W.D.Tenn. Dec. 24, 1981), the district court found that other special circumstances in the case barred an award of attorneys' fees against the intervenor-defendants. In *Kirkland v. New York State Department of Correctional Services*, 524 F.Supp. 1214 (S.D.N.Y.1981), the Court relied on other special circumstances to justify a denial of attorneys' fees against intervenor-defendants. In *Chance v. Board of Examiners*, 70 F.R.D. 334 (S.D.N.Y. 1976), the intervenor-defendants participated as parties in only a very limited portion of the

case, serving as amicus curiae for the remainder of the action. In none of these cases, did any of the courts even suggest that an award of attorneys' fees against intervenor-defendants would never be appropriate.

6. In some ways, intervenor-defendants now appear to be arguing that they never were an appropriate party to this lawsuit. Having voluntarily petitioned the Court to intervene in this action, and having fully participated in the action throughout its procedural history, intervenor-defendants cannot now be heard to argue that they were an improper party to the lawsuit.

argue that the issues raised by this litigation were matters of first impression and that they acted in good faith in urging the adoption of their particular views on those issues. While the *Kirkland* court accepted the intervenors' good faith as a basis for finding circumstances, 524 F.Supp. at 1217–19, the Sixth Circuit has taken an opposing view. In *Haycraft*, the Court stated:

> An award of attorneys' fees under § 1617[7] is not based on a defendant's intent or purposes, nor does the prevailing party need to demonstrate "bad faith" on the part of his opponent under this section....

606 F.2d at 132. In view of this authority, the Court rejects intervenor-defendants' argument that their good faith represents special circumstances.

■ Intervenor-defendants next argue that their beneficial service in framing the issue before the Court in the § 1983 claim provides the special circumstances justifying the denial of an award. of attorneys' fees. This argument was recently considered in *May v. Cooperman*, 578 F.Supp. 1308 (D.N.J.1984). In that case, the district court awarded attorneys' fees against a state legislature which had intervened as a defendant in support of the constitutionality of a "minute of silence" statute. In that case, the court stated that while intervenors:

> defense of the statute assisted in the development of the facts and law, thereby serving what I considered a valuable public function, the same could be said for the defendants in many § 1983 cases. The fee statute contemplates fee assessment against defendants notwithstanding that type of contribution. Having intervened, the Legislature stands in the same position as any other defendant who has defended an unconstitutional statute.

*Id.* at 1317. The Court finds this reasoning persuasive and, therefore, rejects intervenor-defendants' argument that this argument constitutes special circumstances.

■ The final argument raised by intervenor-defendants in favor of a finding of special circumstances is the position that liability for an award of attorneys' fees will have a chilling effect on intervenors' efforts to promote constitutional values. In *Planned Parenthood of Memphis v. Alexander*, No. 78–2310 (W.D.Tenn. Dec. 24, 1981), Judge Wellford stated that:

> To allow the plaintiffs' claim for very substantial fees and costs in these circumstances against intervenors could well choke or, as a practical matter, even preclude the opportunity of persons and groups legitimately concerned about enforcement of, or challenge to, controversial laws relating to important, delicate and sensitive personal rights, to express their positions or become involved before the courts.

Slip. Op. at 8 (citation omitted). Upon review of this decision, the Court will not follow the *Alexander* court's reasoning. Intervenor-defendants could have expressed their legitimate concerns regarding the constitutionality of the challenged ordinance by appearing as amicus curiae before the Court. Instead, intervenor-defendants elected to become parties to this action and align themselves with the city-defendants. Having done so, intervenor-defendants cannot be heard to argue that they sought only an amicus curiae role in this case. Under this analysis, the Court rejects this proposed claim of exceptional circumstances.[8]

### C.

In view of this analysis, the Court concludes that there are no special circumstances justifying the denial of an attor-

---

7. *Haycraft* involved an award of attorneys fees under 20 U.S.C. § 1617, a provision dealing with the award of attorneys' fees in school desegregation cases. That statute, and the cases decided under it, are applicable to cases decided under 42 U.S.C. § 1988.

8. Another basis for rejecting the *Alexander* court's analysis is a consideration of the *Alexander* court's discussion of the intervenor-defendant's "good faith." Despite the *Haycraft* court's ruling that intent is irrelevant, the *Alexander* court relied upon the "good faith" of the intervenors in denying an award of attorneys' fees.

neys' fee award in this case. Accordingly, the Court will make an award of attorneys' fees in this case.

### III.

Having concluded that an award of attorneys' fees is appropriate in this case, the Court next turns to a consideration of the second category of issues raised by the fee application—the legal standards which the Court will apply in determining the reasonableness of the fee application. Upon review of the parties' briefs, the Court believes that further briefing is appropriate on the following questions:

1. Should the Court make an apportionment of liability for attorneys' fees between the city-defendants and the intervenor-defendants? [9]

2. Does the Sixth Circuit's failure to tax costs to the defendants in this action preclude an award of attorneys' fees for work before the Sixth Circuit? *See Buian v. Baughard,* 687 F.2d 859, 862 (6th Cir.1982).

3. Is plaintiffs' counsel entitled to an award of attorneys' fees for work before the United States Supreme Court?

4. Is the relevant market for determining hourly rates different for work before District Court, Court of Appeals, and the Supreme Court?

5. If the Court concludes that the relevant community for determining any portion of the prevailing market rates to be used in calculating the award is Akron, does the Court have the authority to call members of the Akron legal community as its own witnesses to testify regarding prevailing market rates?

6. Pursuant to the analysis set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), should this Court exclude any elements of plaintiffs' application for attorneys' fees?

7. How have other courts analyzed the reasonableness applications for attorneys'

fees (a) for multiple moot court exercises in preparation for Supreme Court argument? and (b) for the work of multiple consultants who assist in preparing Supreme Court briefs?

8. Under the standards set out in *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), should plaintiffs' counsel receive an upward adjustment from lodestar?

Counsel are to file their briefs discussing these issues on or before July 16, 1984. Upon resolution of these issues, the Court will schedule a second evidentiary hearing regarding the reasonableness of the individual items of the attorneys' fees application.

If counsel desires to conduct any further discovery in this matter, counsel shall file proposed discovery requests with the Court. All discovery, with the exception of a deposition of Mr. Landsman, must be complete by August 1, 1984.

IT IS SO ORDERED.

---

Slip Op. at 7. The Court, however, recognizes that subsequent appellate rulings on the "chilling effect" argument may require the Court to reexamine its ruling on this issue.

**9.** The Court's research indicates that a number of courts in the Seventh Circuit have addressed this problem. *See Decker v. United States Dept. of Labor,* 564 F.Supp. 1273, 1281–82 (E.D.Wisc. 1983).