**Robert W. KELLEY et al., Plaintiffs-Appellants, Cross-Appellees,**

v.

**METROPOLITAN COUNTY BOARD OF EDUCATION, et al., Defendants-Appellees, Cross-Appellants.**

Nos. 83–5175, 83–5243.

United States Court of Appeals, Sixth Circuit.

Reargued June 14, 1985.

Decided Sept. 23, 1985.

Avon N. Williams, Jr., Richard H. Dinkins, Williams & Dinkins, Nashville, Tenn., Jack Greenberg, Charles Ralston (argued), James M. Nabrit, III, Theodore Shaw, New York City, for plaintiffs-appellants, cross-appellees.

William R. Willis, Jr. (argued), Marian Harrison, Willis & Knight, W.J. Michael Cody, Atty. Gen. of Tenn., Frank Scanlon, Nashville, Tenn., for defendants-appellees, cross-appellants.

Before LIVELY, Chief Judge; ENGEL, KEITH, KENNEDY, MARTIN, CONTIE, KRUPANSKY, WELLFORD and MILBURN, Circuit Judges; and EDWARDS and CELEBREZZE, Senior Circuit Judges.[1]

KRUPANSKY, Circuit Judge.

Plaintiffs Robert W. Kelley and the class he represents appealed and defendant Metropolitan County Board of Education (Board) cross-appealed the district court's award of attorney's fees in this school desegregation case.

Commencing on the heels of the landmark case of *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the instant case has spawned volumes of court opinions and orders at both the district and appellate levels. These decisions need not be recounted in detail here. *See, e.g., Kelley v. Metropolitan County Board of Education*, 687 F.2d 814 (6th Cir.1982), *cert. denied*, 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); *Kelley v. Metropolitan County Board of Education*, 463 F.2d 732 (6th Cir.), *cert. denied*, 409 U.S. 1001, 93 S.Ct. 322, 34 L.Ed.2d 262 (1972); *Kelley v. Metropolitan County Board of Education*, 511 F.Supp. 1363 (M.D.Tenn.1981). Suffice it to say that the litigation undoubtedly required hundreds of hours of work by the plaintiffs' and Board's attorneys.

The plaintiffs' initial motion for attorney's fees, pursuant to the Educational Amendments of 1972, 20 U.S.C. § 1617, was filed on February 8, 1974. Subsequent filings amended the pending motion to include a prayer for relief under the 1976 Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988. In December, 1982, the trial court conducted hearings on the issue of attorney's fees. On February 23, 1983, the court awarded plaintiffs' fees and costs of approximately $139,500 or less than ten percent of the amount requested.[2] The discrepancy between the amount requested and that awarded formed the basis of plaintiffs' appeal.

Specifically, plaintiffs alleged error in the district court's refusal to award attorney's fees for services rendered prior to 1972, for declining to award fees for appellate services, and for abusing its discretion in calculating the daily and hourly rates of plaintiffs' attorneys Avon Williams and Richard Dinkins. The defendant Board's cross-appeal challenged the district court's failure to discern the specific extent to which plaintiffs prevailed on each of their claims, and in holding the Board liable for services required by plaintiffs' attorneys due to the intervention of third parties.

The district court's denial of attorney's fees for services performed prior to 1972

---

**1.** The court's decision to review the instant case *en banc* effectively vacated the prior Sixth Circuit opinion on this case which was printed at 755 F.2d 67 (6th Cir.1985).

**2.** In its motion for attorneys fees, plaintiff requested the following amounts for services rendered in the 28-year history of the case:

(1) Avon Williams, for the firm of Looby and Williams, 917.8 hours at $200 per hour and 36.4 days at $1,500 a day, totaling $238,160 plus a 100 percent contingency factor for a total of $476,320;

(2) Avon Williams, individually, 1,211.5 hours at $200 per hour and 87.3 days at $1,500 a day, totaling $372,250 plus 100 percent contingency factor for a total of $746,500;

(3) Richard Dinkins, individually, 215.6 hours at $120 per hour and 38 days at $1,500 a day, totaling $82,872, plus a 100 percent contingency factor for a total of $165,744.

An additional $126,000 was requested for work performed by Legal Defense Fund attorneys.

was predicated on the court's determination that a 1971 desegregation order, entered by the district court and approved by the Sixth Circuit, was a "final order" which terminated entitlement to attorney's fees under this court's mandate in *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

In *Northcross, supra*, this court cautioned that although attorney's fees could be awarded retroactively in all desegregation cases pending at the date of § 1988's enactment, such retroactive relief was not automatic. The court stated:

> This is not to say that a retroactive award of attorney's fees must be made in all school desegregation cases. Certain interim aspects of the case may have been subject to a final order settling the issue of attorney's fees to that point, rendering the reopening of long-settled aspects of the case unfair.

611 F.2d at 635.

Based on the above guidance, the *Northcross* district court held on remand that a 1966 consent order entered in the Memphis school desegregation case constituted a final order, thus barring an award of attorney's fees for work completed prior to 1966.

In the instant case, the court below concluded that the 1971 order of the district court, affirmed in *Kelley v. Metropolitan County Board of Education*, 463 F.2d 732 (6th Cir.), *cert. denied*, 409 U.S. 1001, 93 S.Ct. 322, 34 L.Ed.2d 262 (1972), constituted a "final order" as did the 1966 consent decree at issue in *Northcross*. This court, however, is not persuaded by that conclusion.

In upholding the lower court's sanctioning of the HEW plan in 1972, this circuit initially observed:

> The order of the District Judge is the first comprehensive and *potentially effective desegregation order* ever entered in this [17 years of] litigation. The District Judge tells us that now *the remedy is at least in sight.*

463 F.2d at 734.

Consequently, this court observed in 1972 that the only issues of substance presented in that appeal were the "practical problems which appellants claim have developed since the entry of the district judge's [1971] order", 463 F.2d at 744, such as the lengthy bus rides to which youngsters were subjected as part of the desegregation plan. However, the Sixth Circuit directed the parties to seek a remedy for these problems in the district court. The court instructed:

> As appellants well know, the arena for fact-finding in the federal courts is the United States District Court. Until these claims are presented in a trial court, with an opportunity for sworn testimony to be taken and controverted issues of facts decided by the processes of adversary hearing, this court has no jurisdiction.

463 F.2d at 744–45.

The 1972 Sixth Circuit opinion further related that documents included in the appellate record suggest "that local authorities in Nashville and Davidson County have not made good faith efforts to comply with the order of the District Judge," 432 F.2d at 745. The 1972 appellate decision thus concluded:

> The District Court order in this case specifically retained jurisdiction. Thus, upon our affirmance, the door of the District Court is clearly open (as it has been) to the parties to present any unanticipated problems (not resulting from failure to comply with its order) which may have arisen or may arise in the future.

463 F.2d at 747.

Thus, it is clear that the Sixth Circuit did not view the 1971 order as signaling the termination of the litigation. Moreover, the record is replete with disclosures that the plaintiffs, as well as defendants, have continuously engaged in adversary proceedings of magnitude in conjunction with the modification and implementation of the 1970 plan with charges and countercharges

of asserted disparate treatment of black children.[3] As recently as 1982, this circuit again remanded the case, concluding that "[i]n large measure, the pupil assignment components of this plan do not withstand constitutional scrutiny." *Kelley*, 687 F.2d at 817.

■ In view of the foregoing, it is quite apparent that the 1971 district court's disposition and this court's subsequent 1972 affirmance of that decision, did not represent a distinct break in the litigation. Accordingly, as envisioned by the Sixth Circuit in *Northcross*, an award of fees for legal services performed and accrued prior to 1972 is appropriate.

The trial court having initially disallowed attorneys fees for the period between the inception of this action on September 23, 1955, and May 30, 1972, is directed upon remand to conduct hearings and award attorneys fees for services performed at the trial and appellate levels by determining and applying the prevailing daily hourly rate, daily in-court time, and other awardable fees for each year of the period involved.

Plaintiffs have also challenged the trial court's refusal to award attorney's fees for services performed by their counsel at the appellate level. Compensation was sought, *inter alia*, for appellate services which cul-

minated in this court's 1972 and 1982 *Kelley* opinions. *See*, 463 F.2d 732; 687 F.2d 814.

The court below predicated its denial of legal fees for the appellate litigation on *Buian v. Baughard*, 687 F.2d 859 (6th Cir. 1982). In *Buian*, the court announced that the award of costs to a litigant pursuant to the Federal Rules of Appellate Procedure was an absolute prerequisite to the award of attorney's fees under § 1988 for services resulting from the pursuit of appellate review. Because costs were not awarded by this court to the plaintiffs at the conclusion of the various appellate proceedings entertained by this court, the district court applying *Buian* barred compensation for their attorneys' services.

■ Upon a reconsideration of *Buian* and its mandates, this court concludes that an award of costs pursuant to Fed.R. App.P. 39(a)[4] is separate and distinct from and totally unrelated to an award of attorney's fees pursuant to the directions of § 1988. Accordingly, *Buian* is hereby overruled. While it is true that § 1988 expressly states that attorney's fees "*may* be awarded as part of costs," neither the legislative history nor the express language of § 1988 mandates the conclusion expressed in *Buian*.[5] *See*, *Robinson v.*

---

3. For example, on October 21, 1971, plaintiffs moved to join the metropolitan government, mayor and council members as parties due to the control these officials exhibited over the financial resources necessary to implement the transportation aspect of the plan; on March 17, 1972, the Board submitted its second report to the court in which it suggested, *inter alia*, plans for a new high school and a capital improvement schedule for schools which were at least 15% black; in June, 1972, the Board sought changes in the 1971 plan concerning elementary and junior high school attendance zones which plaintiffs opposed while reiterating their claims that the plan in effect had a disparate impact on black children; and on May 20, 1973, the Board petitioned for approval of its "Long Range Building Program". In sum, the district court's docket sheet evinces a steady stream of activity from the initiation of this litigation to the date of the present appeal.

4. While Fed.R.App.P. 39(a) sets forth general guidelines for the award of costs on appeal,

governing such items as the copying of briefs, appendices and records, it also allows the appellate tribunal wide discretion in reimbursing a party for its expenses. The rule states in pertinent part:

> **Rule 39. Costs**
> **(a) To Whom Allowed.** Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court; if a judgment is affirmed, costs shall be taxed against the appellant unless otherwise ordered; if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered; if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court.

5. The dissent's argument that *Buian's* pronouncements are supported by cases such as *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) and *Marek v. Chesny*, —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) is

*Kimbrough,* 652 F.2d 458, 463 (5th Cir. 1981) (pre-*Buian* decision expressly rejecting the approach advocated in *Buian* ). *See, e.g., Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159, 173 (5th Cir.1978) (*en banc* ), *aff'd* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (recognizing circuit court's discretionary power to award costs and fees arising from appeal pursuant to Rule 39 but remanding to district court as proper forum to determine total cost and fees, including attorney's compensation, for prevailing party in that case); *Willie M. by Singer v. Hunt,* 564 F.Supp. 363 (W.D.N.C.1983), *aff'd as modified,* 732 F.2d 383 (4th Cir.1984) (specifically rejecting *Buian* rationale). To the contrary, the relevant inquiry is simply whether the party seeking compensation substantially prevailed at the appellate level. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (restating the general rule that prevailing plaintiff should ordinarily recover an attorney fee in civil rights cases). Consideration and disposition of this critical issue is pragmatically left to the forum of the trial court. *Northcross,* 611 F.2d at 637. *See also, Doe v. Busbee,* 684 F.2d 1375 (11th

Cir.1982); *Taylor v. Ouachita Parish School Bd.,* 648 F.2d 959 (5th Cir.1981); *Molina v. Richardson,* 578 F.2d 846 (9th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978).[6]

In addition to challenging the lower court's exclusion of time accrued for pre-1972 and appellate work, plaintiffs urge that the hourly and daily rates awarded by the lower court for legal services rendered subsequent to May 30, 1972, by Avon Williams and Richard Dinkins were inadequate. Compensation at the rate of $200 per hour and $1,500 per day in court was requested for Williams, and $120 hourly and $1,500 per day sought for Dinkins' services. Subsequent to evaluating the prevailing rate charged by experienced and skillful lawyers in the Nashville area, the court below determined that the market rate in federal court litigation for an attorney of Williams' experience, ability and stature was $100 per hour and $1,000 per day of trial. The rate for Dinkins, who was introduced into the case upon gaining admission to the bar, was $60 per hour and $600 per day in court. The court also rejected plaintiffs' prayer for a 100 percent

not persuasive. *Hutto* simply determined that attorney's fees may be classified as "costs," and as such, are not subject to eleventh amendment immunity which normally bars monetary damage awards when a state is the defendant in a civil rights action. Similarly, the Court in *Marek,* after reviewing the legislative history, purpose and express language of § 1988 and Fed.R. Civ.P. 68 respectively, concluded that Congress intended the Rule 68's cost sanctions, which are mandatorily-imposed upon a party who refuses a settlement offer and who subsequently fails to recover a final judgment greater than the offer, to include attorney's fees. In determining that the cost-shifting provision of Rule 68 encompasses an award of attorneys fees under § 1988, the *Marek Court,* in footnote 2, distinguished its prior opinion in *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The Court observed that, unlike Rule 68, the cost provision at issue in *Roadway* (28 U.S.C. §§ 1920 and 1927) specifically enumerated the type of costs awardable as sanctions under certain circumstances, thus making it inappropriate for the Court to interpret "costs" as including § 1988 attorney's fees. In other words, the *Marek* Court recognized a critical distinction between interpretation of "costs"

where the relevant statute sets forth its own definition of the term, as opposed to situations where "costs" are undefined. As appellate Rule 39 specifically delineates the "costs" to which it applies, i.e. the "traditional" costs of printing briefs, appendices, records, etc., the pronouncements of *Marek* render it inappropriate for this court to judicially-amend Rule 39's cost provisions to include § 1988 attorney's fees. In sum, neither *Hutto* nor *Marek* addressed the narrow issue presented by *Buian,* to wit, whether the appellate court's discretionary decision to award or deny costs pursuant to Fed.R.App.P. 39 should be considered an absolute prerequisite to the prevailing party's § 1988 entitlement to attorney's fees for legal services rendered at the appellate level.

**6.** Contrary to the concerns articulated by the dissent, the majority does not foresee its opinion as impacting or overruling the decision in *Johnson v. Snyder,* 639 F.2d 316 (6th Cir.1981) (per curiam), as *Johnson* merely concluded that since § 1988 attorney's fees may be considered as part of costs, the filing of a petition for attorney's fees is not governed by the time limitations of Fed.R.Civ.P. 59 for motions to alter or amend the judgment or for a new trial.

contingency factor, but approved a 25 percent upward adjustment to compensate for the difficulty of the prolonged litigation and its unpopularity in some sectors of the community. The court then reduced the amount 10 percent to account for duplication of services and possible miscalculations in the attorneys' reconstruction of their time records.

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), the Fifth Circuit listed 12 factors to be considered in determining an appropriate award of attorney's fees. These factors include, *inter alia*, the time and labor required, the novelty and difficulty of the litigation, the customary fee, and the experience, reputation and ability of the attorneys. In *Northcross*, this court observed that *Johnson* did not provide guidance as to the relative weight to be accorded each factor, and suggested that "an analytical approach" be applied. *Northcross* instructs:

> We conclude that an analytical approach, grounded in the number of hours expended on the case, will take into account all of the relevant factors and will lead to a reasonable result. The number of hours of work automatically reflect the "time and labor involved," "the novelty and difficulty of the question," and "preclusion of other employment." The attorney's normal hourly billing rate will reflect "the skill requisite to perform the legal service properly," "the customary fee," and the "experience, reputation and ability of the attorney." Adjustments upward may be made to reflect the contingency of the fee, unusual time limitations and the "undesireability" of the case.

611 F.2d at 642–43.

Fairly read, *Northcross* advises that the attorney's normal hourly billing rate should be a key focal point in award determinations. In the recent case of *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court further instructed that "reasonable rates" are to be determined under § 1988 "according to the prevailing market rates in the relevant community." 104 S.Ct. at 1547.

In contesting the $100 per hour award to Williams, plaintiffs cited testimony adduced at the hearing on the motion for fees evincing (1) Williams' reputation as an experienced and successful civil rights lawyer; (2) that "customary fees" for similar work in the Nashville area ranged from $100 to $200 an hour; (3) that Williams' hourly fee for office work was $120; and (4) that the unpopularity of the case has resulted in threats against Williams. Testimony that the standard fee for someone of Dinkins' stature was $65 to $130 an hour was also cited to support plaintiffs' contention that Dinkins' award was inadequate. In addition, plaintiffs recounted the unpopularity and length of the litigation in arguing that the contingency fee should be higher than the 25 percent awarded by the court below.

■ Considering in tandem the pronouncements of the Supreme Court and Sixth Circuit delineating the correct method for calculating attorney's fees, this court concludes that Williams is entitled to at least a minimum rate of $120 per hour. This amount is a reasonable point of departure in calculating Williams' hourly rate in accordance with prevailing Supreme Court and this circuit's directions and is within the parameters of the evidence that "customary fees" for similar work in the Nashville area ranged between $100 and $200 an hour. The award to Dinkins must also be reconsidered using as a minimum point of departure an amount of $65 per hour as the prevailing value of his skills in the Nashville legal community. The daily (in court) rate for Williams and Dinkins should also be upgraded to $1,200 and $650 respectively.

■ The lower court's overall reduction of fees by 10 percent for duplication of services is justified under the holdings of *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir.1979) and *Oliver v. Kalamazoo Board of Education*, 576 F.2d 714, 715 n. 2 (6th Cir.1976) (per curiam). In addition, the Supreme Court recently approved a 30 percent overall reduction in a case, like the one

at bar, where the attorneys failed to keep contemporaneous time records and thus had to reconstruct them from memory. *See Hensley v. Eckerhart,* 461 U.S. 424, 428, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). However, the reduction in *Hensley* was also designed to compensate for the attorney's inexperience. Thus, the 10 percent reduction in the instant case is reasonable and should not be disturbed.

■ Plaintiffs also challenged the district court's refusal to award fees for the two days and seven hours plaintiffs' attorneys attributed to discussions with Dr. Scott, the plaintiffs' expert witness at the 1979 and 1980 hearings. The court's opinion was based on its finding that Dr. Scott's testimony was frivolous under *Northcross,* 611 F.2d at 636, in light of plaintiffs' repudiation of much of Dr. Scott's testimony after the court had admitted it. The district court's conclusion in this respect is proper.

In its cross-appeal, the defendants alleged that the trial court erred in failing to exclude fees for services rendered by plaintiffs' attorneys arising from claims and proceedings stemming from the intervention or joining of other parties. These "outside" parties were:

1. The Metropolitan (Nashville/Davidson Co.) Mayor and Council, which plaintiffs joined as defendants in 1972. (Plaintiffs prevailed in their effort to enjoin these defendants from interfering with the desegregation plan.)

2. The intervention by the Board itself as a third party plaintiff in 1973 to present its claim against third-party defendant HEW.

3. A group of otherwise unidentified "intervenors" who proposed a desegregation plan to the district court in 1979.

4. Another unidentified group of intervenors who entered the case to propose the creation of a magnet school.

The defendant Board further noted that it vehemently opposed the intervention of the third and fourth group of intervenors listed above.

Plaintiffs responded to the Board's argument on this issue by observing that it was the Board's failure to dismantle its dual school system that occasioned the interventions and prolonged the litigation in this lawsuit.

Defendants relied primarily on *Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir.1979) (per curiam) for the proposition that plaintiffs should look to the intervenors, rather than the defendant, for expenses occurred as a result of the intervention. However, *Haycraft* is distinguishable from the instant case in several important respects.

In *Haycraft,* L.J. Hollenbach, a county judge of Jefferson County, Kentucky, intervened on behalf of "all the people of Jefferson County" in a desegregation case pending in federal court. The judge proposed an alternative desegregation plan which protracted the litigation and resulted in several appeals. Following the appeals, the original plaintiffs sought an award of attorney's fees to be assessed against the intervenor pursuant to the Emergency School Aid Act of 1972, 20 U.S.C. § 1617. In granting the order, the district court held the $11,312 award against the intervenor appropriate, as plaintiffs would have saved countless hours were it not for the intervenor. On appeal, this circuit affirmed the award, holding that the plaintiffs became the "prevailing party" as regarded Hollenbach "when the district court rejected his desegregation plan and dismissed him as an intervenor." 606 F.2d at 132.

■ Thus, the award assessed against the intervenor in *Haycraft* was predicated on the court's finding that the intervenor obstructed rather than aided in the development of the court-ordered desegregation scheme. The award was also sought by the plaintiffs directly from the intervenor. In the instant case, there is no evidence that the intervenors in any way interferred with the progress of the litigation, and thus plaintiffs would not, under the *Haycraft* analysis, be entitled to remuneration *from*

*the intervenors.* The question remains, of course, whether the plaintiff is entitled to attorney's fees *from the Board* for the extra time which the plaintiffs' counsel devoted to issues raised by the intervenors.

There appears to be no case law which directly resolves this issue. Common sense dictates that the Board should not be held liable for the costs plaintiffs incurred in seeking an injunction against the Metropolitan Mayor and Council, as that group was itself a third-party defendant, unrelated to the Board. Thus, if any party is liable for those expenses, it would be the Metropolitan government and not the Board. As to the other intervenors, however, (i.e. the Board itself as a third-party plaintiff, the group which proposed a desegregation plan in 1979, and the advocates of the magnet school) plaintiffs' argument that the Board's failure to dismantle its dual school system caused the intervention is persuasive. Thus, plaintiffs are entitled to compensation from the Board for all legal services except those resulting from plaintiff's addition of the Metropolitan mayor and Council as third-party defendants.

Defendant's final argument on cross appeal was that the court erred in not determining the specific extent to which plaintiffs had prevailed in the action. The defendant contended that while the court's focus on the "overall results" of the case was sufficient to satisfy the "prevailing party" requirement as defined by this circuit in *Northcross*, a recent Supreme Court decision has changed the standard. Defendant cites *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) for the proposition that the *Northcross* approach has been modified, and that awards under § 1988 now require that a party's request for attorney's fees be carefully scrutinized as to the extent of success on each claim, and further, that time spent on unsuccessful claims that are distinct from successful claims should be excluded in determining a reasonable fee.[7] Thus, defendant suggested that under the mandate of *Hensley*, the case should be remanded with instructions to examine the extent to which plaintiffs have prevailed on each substantive issue before awarding fees. The court agrees.

In *Hensley*, plaintiffs brought a lawsuit on behalf of all persons involuntarily confined at the Forensic Unit of the Fulton State Hospital in Missouri. The complaint challenged the treatment and conditions at the Forensic Unit presenting a wide variety of alleged constitutional infringements. The court found constitutional violations in five of six general areas cited in plaintiffs' complaint: physical environment; individual treatment plans; least restrictive environment; visitation, telephone and mail privileges; and seclusion and restraint. However, it found the sixth general area, staffing, to be sufficient.

In ruling on an attorney's fees motion, the *Hensley* district court first determined that plaintiffs were prevailing parties even though they had not succeeded on all six claims, and further refused to eliminate from the award hours spent on the unsuccessful claim. The Supreme Court reversed and remanded, reasoning that two questions must be addressed when a motion for attorney's fees is presented in a case involving numerous claims: (1) did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?; and (2) did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? 461 U.S. at 434; 103 S.Ct. at 1940.

However, *Hensley* does not, as defendant suggested, represent a *total* break from the approach taken regarding the "prevailing party" issue by this circuit in *Northcross*. Rather, the *Hensley* court noted that in some cases, the litigation cannot be "viewed as a series of discrete claims." *Id.* In such a case, the Court

---

7. Specifically, defendant alleged that plaintiffs have been erroneously awarded fees for time spent pursuing unsuccessful charges of contempt against the Board, yet unresolved matters as to faculty composition, and their effort to keep Pearl High School open.

stated, the *overall result* would remain as the primary factor in determining attorneys fees.

The *Hensley* court instructs:

Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435, 103 S.Ct. at 1940.

On remand, the district court must follow the mandates of *Hensley* as explicated above. .

In sum, this court finds the amounts awarded by the lower court inadequate.[8] This case is therefore remanded to the district court with instructions to award fees for services performed by plaintiffs' attorneys prior to 1972; award fees for appellate work; reevaluate the hourly rate to be awarded to Williams and Dinkins for the period subsequent to May 30, 1972 in accordance with the direction of this decision; reevaluate the court time for Williams and Dinkins with a minimum departure point of $1,200 and $650 respectively for the period subsequent to May 30, 1972; decrease the award for the time spent by plaintiffs' attorneys to bring in the city government as a third party defendant; follow the mandate of *Hensley* to determine which claims plaintiffs have succeeded upon and those which they have not, and to calculate the attorneys' compensable hours accordingly; allow a 25% increase as a contingency

factor; and decrease the overall award by 10% for duplication of services and the reconstruction of time records from memory.

In view of the foregoing, this case is Reversed and Remanded. Costs awarded to plaintiffs.

KENNEDY, Circuit Judge, concurring in part and dissenting in part, joined by ENGEL and WELLFORD, JJ.

I concur in the court's holding that the 1971 desegregation order did not constitute a distinct break in the litigation. I dissent, however, from the majority's decision to overrule *Buian v. Baughard*, 687 F.2d 859 (6th Cir.1982). I remain convinced that the award of costs on appeal is a prerequisite to the award of appellate attorney fees under 42 U.S.C. § 1988.

The statutory authorization for attorney fees in civil rights cases provides that

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988.

Traditionally, the Supreme Court, the courts of appeals and the district courts each issue cost awards only for the proceedings within their own sphere. Rule 39(a) of the Federal Rules of Appellate Procedure governs the award of costs on appeal. It provides that costs shall be awarded to the prevailing party, unless otherwise ordered. Where each party prevails in part, costs are allowed only as ordered by the court. Normally, a prevailing party receives costs and a partially prevailing party receives partial costs.[1] In the rare

---

**8.** This court also notes that the *entire* amount awarded to plaintiffs' attorneys for 28 years of service in this case was less than one-half of the $288,000 which the Board paid its attorneys to defend against the litigation in just one five-year period, i.e. 1978–1982.

**1.** If there is an appeal and a cross appeal and the plaintiff prevails on one and loses on the other, costs would ordinarily be awarded only on the successful appeal. Although the attorney's services could not readily be divided, under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the fee award could

situation where the appellate court disallows costs entirely, the court very likely has a good reason for doing so, a reason which may or may not be apparent to the district court when it decides the subsequent motion for attorney fees. I do not see how we can allow a district court the discretion to award appellate attorney fees "as part of the costs" when we have refrained from awarding costs.[2]

Moreover, I do not see how we can, consistent with the Eleventh Amendment, allow an award of attorney fees against a state other than as part of costs. Section 1988 does not expressly abrogate Eleventh Amendment immunity, *cf. Atascadero State Hospital v. Scanlon*, —— U.S. ——, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985) ("Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself"), and the Supreme Court has upheld § 1988 fee awards against states only because they are part of costs:

> The Act imposes attorney's fees "as part of the costs." Costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity. The practice of awarding costs against the States goes back to 1849 in this Court. The Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants
>
> . . . .
>
> Just as a federal court may treat a State like any other litigant when it assesses costs, so also may Congress amend its definition of taxable costs and

have the amended class of costs apply to the States, as it does to all other litigants, without expressly stating that it intends to abrogate the States' Eleventh Amendment immunity. For it would be absurd to require an express reference to state litigants whenever a filing fee, or a new item, such as an expert witness' fee, is added to the category of taxable costs.

There is ample precedent for Congress' decision to authorize an award of attorney's fees as an item of costs.... It is much too late to single out attorney's fees as the one kind of litigation cost whose recovery may not be authorized by Congress without an express statutory waiver of the States' immunity.

*Hutto v. Finney*, 437 U.S. 678, 695–98, 98 S.Ct. 2565, 2575–77, 57 L.Ed.2d 522 (1978) (citations and footnotes omitted).

As recently as this term, the Court has shown that it regards the "as part of the costs" language as more than mere surplusage. In *Marek v. Chesny*, —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Court held that the "costs" contemplated by Federal Rule of Civil Procedure 68— which shifts to the plaintiff all costs incurred subsequent to a rejected settlement offer which is not exceeded by the eventual recovery—include attorney's fees awardable under § 1988. Plaintiffs in *Marek* had rejected a $100,000 settlement offer in their § 1983 suit, and subsequently won only a $60,000 judgment. Thus, under Rule 68, plaintiffs could not recover "costs" incurred during the period after the settlement offer. Plaintiffs nonetheless sought attorney's fees for that period. The Court

be reduced according to the degree of success. This need not involve the courts of appeals in determining the amount of the fees. The court need only state in its award of costs that attorney fees should be reduced by the appropriate percentage because of the limited success.

**2.** I am not insensitive to the harshness of disallowing attorney fees in the instant case because of the absence of cost awards. I do not know why the panels in the 1972 and 1982 *Kelley* decisions ordered each party to bear its own costs on appeal. Appellants prevailed on the school district's appeal in 1972 and also prevailed in 1982. If it was through inadvertence,

or through a perception that each party had partially prevailed and the costs balanced out, the cost issue could have been made the subject of a motion for rehearing by appellants, in anticipation of seeking attorney's fees. Appellants never filed such a motion. The 1982 *Kelley* case, however, was decided six weeks prior to *Buian* and appellants might reasonably not have realized what the failure to award costs portended for their impending attorney's fee motion. Because of the harshness of the result, we might decline to apply *Buian* in the present case. I would prefer this approach to the majority's discarding of *Buian*.

ruled that since § 1988 defined attorney's fees as costs, fees could not be awarded for any period for which costs were not awarded:

> Pursuant to ... § 1988, a prevailing party in a § 1983 action may be awarded attorney's fees "as part of the costs." Since Congress expressly included attorney's fees as "costs" available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68.

105 S.Ct. at 3017.

In dissent, Justice Brennan argued that it was wrong to let a determination of attorney's fees, which is governed by a reasonableness standard, be subordinated to and subsumed by a rule on costs, which may have a much more mechanical application. 105 S.Ct. at 3020–21. In the instant case, I take it that essentially this sentiment underlies the majority's decision to reverse *Buian*. But the Supreme Court rejected that argument in favor of the "plain language" view that since attorney's fees are defined as part of costs, they cannot be separately awarded where costs are not awarded.

Notwithstanding all of this, the majority, with an absence of analysis and a dearth of support, "concludes that an award of costs pursuant to Fed.R.App.P. 39(a) is separate and distinct from and totally unrelated to an award of attorney's fees pursuant to the directions of § 1988." The majority adds that "[w]hile it is true that § 1988 *expressly* states that attorney's fees 'may be awarded as part of the costs,' neither the legislative history *nor the express language* of § 1988 mandates the conclusion expressed in *Buian*." (Emphasis added). I do not know what that "express language" mandates if not *Buian's* conclusion. The refusal to award costs precludes the award of any part of the costs, and the express language of section 1988 defines

attorney's fees as part of the costs, as discussed in *Hutto* and *Marek*.

The majority cites two cases as support for rejecting the *Buian* approach. While the district court in *Willie M. by Singer v. Hunt*, 564 F.Supp. 363 (W.D.N.C.1983), did explicitly reject *Buian*, the majority's subsequent history of *Willie M.* as *"aff'd as modified"* disguises the Fourth Circuit's partial reversal.

In *Willie M.*, the plaintiffs prevailed overall in a class action, but defendants prevailed on one issue—the scope of the class—which was the subject of an independent appeal. The appellate court awarded no costs on that appeal. Nonetheless, the district court allowed plaintiffs to recover attorney's fees, including fees for time spent on the lost appeal, because they had largely prevailed overall. The Fourth Circuit reversed that part of the decision and disallowed attorney fees for the lost appeal because plaintiffs had not prevailed—precisely the reason, of course, that costs had not been awarded. *See Willie M. v. Hunt*, 732 F.2d 383, 386–87 (4th Cir.1984). Thus, the Fourth Circuit reversed the district court on the very issue that brought *Buian* into play, albeit in such a way that the court avoided altogether a *Buian*-type question.

Not only was the *Willie M.* district court reversed,[3] but one of the cases it relied upon in rejecting *Buian* had been reversed by the Supreme Court. *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1st Cir.1980), had held that Fed.R.Civ.P. 59(e)'s time limit on motions to alter or amend judgments applied to motions for attorney's fees. The court rejected the argument that fees are more like costs than like part of the judgment and thus should be governed by Fed. R.Civ.P. 54(d), which contains no time limit.

The Supreme Court, however, reversed *White*, *see* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 345 (1982), holding that a motion

---

**3.** In addition to *Willie M.*, the majority cites *Robinson v. Kimbrough*, 620 F.2d 468 (10th Cir. 1980), in which the court did allow an attorney's fee award where costs had been denied. Aside

from my plain disagreement with the *Robinson* holding, it does not appear that a *Buian*-type question was squarely addressed by that court.

for attorney's fees was not like a motion to alter or amend the judgment and so not subject to Rule 59(e). The Court declined, though, to rule specifically on whether a request for fees was an application for costs, as three circuits had held, *see Johnson v. Snyder,* 639 F.2d 316, 317 (6th Cir. 1981);[4] *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir.1980); *Knighton v. Watkins,* 616 F.2d 795, 797–98 (5th Cir.1980), or was a third kind of creature, related neither to costs nor judgment, as the Eighth Circuit had held in *Obin v. District No. 9 International Association of Machinists and Aerospace Workers,* 651 F.2d 574 (1981), and as the Ninth Circuit later held in *Metcalf v. Borba,* 681 F.2d 1183 (1982).[5]

It appears that the majority now tacitly adopts the *Obin* view that a claim for attorney's fees is not a request for costs nor part of the judgment but "a matter collateral to and independent of the merits of the litigation." 651 F.2d at 583. Justice Blackmun's concurring opinion in *White* called for the Court to go "one step further" and affirmatively adopt the *Obin* view rather than the "costs" view of *Johnson, Bond* and *Knighton. See* 455 U.S. at 455–56, 102 S.Ct. at 1168. Evidently, a majority of the Court was not willing to do that. Nor am I.

I also dissent from the holding that the District Court abused its discretion in awarding Mr. Williams an hourly rate of $100 for all hours since 1972. The evidence was that rates for attorneys with Mr. Williams' experience were from $100 to $200 per hour at or about the time of the hearing in 1982. However, $100 per hour was the generally prevailing rate. There was also undisputed testimony that rates generally were lower in the early and middle 1970's. The court relies on Mr. Williams' testimony that he charges $120 per hour.

It overlooks his testimony that he began charging $120 per hour in January 1981. (App. at 783). Based on the evidence before it, I do not believe the District Court abused its discretion by adopting the $100 rate, although it might have been preferable to approve a lower rate for earlier years and a higher rate for later years.

WELLFORD, Circuit Judge. (Concurring in part and dissenting in part.)

I concur with Judge Kennedy in her discussion and reiteration of the rationale of *Buian v. Baughard,* 687 F.2d 859 (6th Cir. 1982).

I concur in Judge Krupansky's opinion to the extent it approves of the district court's overall reduction of fees by 10 percent for duplication of services. The opinion observes that a *larger reduction* under appropriate circumstances may be justified where there has been a failure "to keep contemporaneous time records." The fact that only a modest reduction was directed by the trial judge is evidence of a sensitive and understanding approach by him in considering all of the aspects of the attorney fee request in this case under standards set by the Supreme Court.[1]

I also concur in the court's judgment that the district court's conclusion properly refused to award fees for the period during 1979 and 1980 hearings when the essentially frivolous testimony of plaintiffs' expert witness, Scott, was discussed and produced but later repudiated. I agree, furthermore, that defendant Board should not be held liable for the costs plaintiffs incurred in seeking an injunction against the Mayor and Council, since the latter, if anyone, should be responsible, rather than defendant Board, for those expenses. In addition, I agree that there should be a remand to

---

4. In *Snyder,* we held that "attorney's fees awarded under § 1988 are awarded as costs and are not controlled by the time limitations" of Rule 59(e). 639 F.2d at 317. The majority's opinion would seem necessarily to overrule *Snyder* as well as *Buian.*

5. The *Willie M.* district court relied on *Obin* and *Metcalf* in addition to *White.*

1. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).

consider to what extent, if at all, plaintiffs should be considered "prevailing parties" on certain issues still pending, or in respect to charges or claims in which plaintiffs failed to succeed before the trial court (or this court). *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (a case in which some of plaintiffs' counsel participated as did the Attorney General of the State of Tennessee by amicus brief).[2] The district court, on remand, may find some of the claims made by plaintiffs essentially "unrelated" to those on which plaintiffs were found to prevail. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. As the Supreme Court stated:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole time a reasonable hourly rate may be an excessive amount.

> \*     \*     \*     \*     \*     \*

> That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

> \*     \*     \*     \*     \*     \*

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941–42.

I respectfully dissent, however, from other portions of the majority opinion. I would hold *Buian v. Baughard,* 687 F.2d 859 (6th Cir.1982) to be essentially sound in

requiring a determination about allowance of costs as a condition for subsequent allowance of fees in civil rights attorney fee award requests. *Buian* is not inconsistent with the practice of pragmatic referral to the district court for determination of the reasonable amount of an attorney fee award in a proper case. *See Smith v. Detroit Board of Education,* 728 F.2d 359 (6th Cir.1984). I would not overrule *Buian,* and I would affirm the judgment below to the extent that it applied *Buian* to reduce a portion of the fee request.

With regard to the hourly and daily rates awarded to counsel Williams and Dinkins, remembering that "the fee applicant bears the burden of establishing entitlement ... and documenting the appropriate hours and hourly rates," and emphasizing that "the district court has *discretion* in determining the amount of a fee award," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 (emphasis added), I would affirm the district court's action as being within his sound discretion. Much of the fee award claim in this case goes back to services rendered a number of years ago when, in Tennessee, it was rare for an attorney in any case to claim an hourly or daily fee equal to that awarded by the district court in this case. It should be remembered that plaintiffs' attorneys are entitled only to an award for reasonable value of their services.[3] In perhaps this court's most frequently cited case dealing with attorney fees in a comparable school desegregation situation,[4] reference was made to an allowance of fees through 1977 to an experienced and successful civil rights lead counsel, Louis Lucas, who requested $75 an hour for services in a 1977 hearing. That same attorney, involved in numerous school desegregation cases in this Circuit (as has been Mr. Williams, one

---

**2.** It should be noted that the successful plaintiffs' attorney in *Hensley* claimed nearly 3000 hours of time and requested a rate of *$40 to $65 an hour from 1975 through 1979.*

**3.** As a former district judge for many years in the Western District of Tennessee and, before 1971, a practicing lawyer in the largest city in the state, my own experience indicates that

Judge Wiseman was, if anything, generous in his award and rate of compensation granted to plaintiffs' attorneys.

**4.** *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

of the claimant's here), requested an hourly fee of $125 an hour for services in a 1978 hearing in the Memphis desegregation case. He was awarded $75 an hour by this court for non-courtroom time because the requested rate was found to be too high. *Northcross*, 611 F.2d at 641. In that same case, another experienced civil rights plaintiff attorney, William Caldwell, requested $60 an hour for his services under the 1976 Civil Rights Attorney's Fees Awards Act; Elijah Noel, Jr., in a comparable position with Mr. Dinkins, requested $50 an hour for his services to plaintiffs through 1977, $60 thereafter. *Id.*

In *Oliver v. Kalamazoo Board of Education*, 576 F.2d 714 (6th Cir.1978), another leading school desegregation case comparable to the one at issue, lead counsel Lucas (and others in the category of Mr. Williams)[5] received fees ranging from $60 to $100 an hour for courtroom services, and this allowance, instead of "bonus awards," was approved by this court. Other attorneys in the case for plaintiffs were awarded fees ranging from $35 to $60. *Oliver*, 576 F.2d at 717 n. 3. Mr. Williams was awarded total fees of $47,833 by this court arising from his services to plaintiffs as lead counsel over approximately fifteen years in another school case with a similar appellate history, including Supreme Court hearings. *Monroe v. Board of Commissioners of the City of Jackson, Tennessee*, 581 F.2d 581 (6th Cir.1978). *See also Monroe v. Board of Commissioners of Education of Madison County, Tennessee*, 583 F.2d 263 (6th Cir.1978). The rates ultimately approved in those cases were less than those approved by Judge Wiseman after the full hearing conducted by him before making his decision.

I therefore depart from the majority view that an increase in hourly rates or daily rates over and above that established in the reasonable discretion of the trial judge, who is familiar with local practice and local fee rates, was mandated. The majority seems unmindful of the Supreme Court's advice:

We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.

*Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

With the contingency factor added in this case, for service beginning in 1972, plaintiffs attorneys are also being rewarded on a substantially higher basis than were plaintiffs' attorneys in *Northcross* and in *Oliver*. No added contingency factor at all was allowed in *Hensley*.

The concurring opinion of Justice Brennan in *Hensley*, 461 U.S. at 455, 103 S.Ct. at 1950, admonishes:

If a district court has articulated a fair explanation for its fee award in a given case, the court of appeals should not reverse or remand the judgment unless the award is so low as to provide *clearly inadequate* compensation [emphasis added].

Finally, I would affirm the trial judge in his holding that the May 30, 1972 order in this case was a type of "final order settling the issue of attorney's fees to that point." *Northcross*, 611 F.2d at 635. That order, as found by the district court, disposed of all outstanding phases of the case; it was a "discrete step" deciding the then pending issues arising from the change in the law brought about by *Green v. School Board of New Kent County*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). As in all substantial school desegregation cases of this type, including the *Northcross* case, the court retained jurisdiction for such implementation that experience and future changing circumstances might bring about. This did not prevent the 1972 order, affirmed by this court, from being the kind of "discrete step or distinct break in the proceedings" described in *Northcross*. It was

---

**5.** Including a judge on this court, then chief counsel for the NAACP Legal & Defense Fund, and a federal district judge in Michigan.

**692**

a comprehensive order directing desegregation of the metropolitan school system from which both sides unsuccessfully appealed up to the United States Supreme Court. There were no further substantial hearings in this case until 1978, further evidencing that the district court was not clearly erroneous in making a factual finding to that effect and limiting the fee award in light of that finding. It is abundantly clear that major school desegregation cases of this kind may extend over many years, but that interim final orders may come about reflecting a distinct conclusion of then pending issues, which in light of the changes in applicable law, (such as *Green, supra,* and *Swann v. Charlotte-Mecklenburg Board,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971)) may be revised to reflect current standards or new, unforeseen conditions.

In sum, I dissent because I believe Judge Wiesman acted fairly and within the bounds of his sound discretion and applied the law reasonably to the facts of the case.