787 F.2d 590
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BRENDA JACKSON, Plaintiff-Appellee, Cross-Appellant,
v.
ROEMAN REAL ESTATE COMPANY, INC.; H. E. ROE, INDIVIDUALLY
AND IN HIS CAPACITY AS MANAGER OF HAMILTON APARTMENTS;
JOANNE P. ROE, INDIVIDUALLY AND IN HER CAPACITY AS ASSISTANT
MANAGER OF HAMILTON APARTMENTS, Defendants-Appellants,
Cross-Appellees.
 85-3142, 85-3143
 United States Court of Appeals, Sixth Circuit.
 3/5/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: MILBURN and RYAN, Circuit Judges; and WILHOIT, District Judge*.
 PER CURIAM.
 
 
 1
 Defendants appeal and plaintiff cross-appeals from the jury verdict for plaintiff in this housing discrimination case. On appeal defendants advance three arguments. First, defendants argue that the evidence was insufficient to establish the liability of the defendant corporation. Second, defendants argue that the district court erred in permitting testimony of a white 'tester' when a black 'tester' was not presented to testify. Third, defendants argue that the district court erred in granting attorney fees in the amount of $125.00 an hour to plaintiff's attorney. In her cross-appeal plaintiff argues that the district court erred in excluding certain testimony of expert witnesses. For the reasons that follow, we affirm.
 
 I.
 
 2
 On April 23, 1982, plaintiff, a black female, filed her complaint in the United States District Court for the Northern District of Ohio. In her complaint plaintiff alleged that, due to her race, she had been denied the opportunity to rent or negotiate for the rental of an apartment in violation of the Civil Rights Act, 42 U.S.C. Secs. 1981, and 1982, and the Fair Housing Act of 1968, 42 U.S.C. Sec. 3601 et seq. In her complaint plaintiff named Roeman Real Estate Company ('the Corporation'), H. E. ('Randy') Roe, and Joanne P. Roe as defendants. A jury was empaneled, and the case went to trial on November 19, 1984. The following facts were developed at trial.
 
 
 3
 The Corporation owned and operated two apartment complexes in a racially integrated neighborhood of Toledo, Ohio. The president and sole shareholder of the Roeman Real Estate Company was H. E. Roe, Sr.
 
 
 4
 According to the trial testimony of Barbara LaCourse, a prior occupant of Apartment 5 in one of the Roeman Real Estate apartment complexes, she vacated that apartment and, on doing so, removed the curtains from the windows. On September 15, 1981, plaintiff noticed the absence of curtains in Apartment 5 and stopped to inquire about a vacancy. Plaintiff was directed to Apartment 1 where defendant, Randy Roe (the son of the sole shareholder), resided with his wife, defendant Joanne Roe.
 
 
 5
 According to Joanne Roe's testimony, she informed plaintiff that there were no vacancies and, further, that Apartment 5 could not be shown because she did not have the key. At the conclusion of the conversation, plaintiff left her name and phone number with Joanne Roe and requested that she be contacted in the event of a vacancy. Later that day, Joanne Roe gave plaintiff's name and phone number to her husband, Randy Roe. At the same time, Joanne Roe informed her husband that plaintiff was black. After waiting a week, Randy Roe called plaintiff and then discarded the paper.
 
 
 6
 On September 29, 1981, having not heard from the Roes, plaintiff again inquired in person about an apartment. This time Joanne Roe informed her that the apartment had been rented. Plaintiff again left her name and phone number and asked to be called in the event of a vacancy.
 
 
 7
 On the 4th and 14th days of October 1981, the apartment in question was advertised in the newspaper. On October 17, 1981, Sonya Sedlock, a white female, rented the apartment from defendants.
 
 
 8
 Sometime in October 1981, plaintiff contacted the Toledo Fair Housing Center. The Toledo Fair Housing Center took plaintiff's statement, and, on October 19, 1981, a white tester, Jennifer Teschner, went to the same apartment complex. Ms. Teschner, although unable to contact anyone at that time, did subsequently contact Joanne Roe by phone. Joanne Roe informed Ms. Teschner that the apartment had just been rented but, nevertheless, offered to take her name and phone number. Attempts on the part of a black tester to make contact were unsuccessful.
 
 
 9
 The trial was completed on November 30, 1984. Later that day the jury returned a verdict for plaintiff awarding $10,160.00 compensatory damages and $15,000.00 punitive damages. Judgment consistent with the jury verdict was entered on December 6, 1984. In a Memorandum and Order filed January 8, 1985, the district court granted plaintiff's motion for attorney fees in the amount of $13,548.75 and courts costs in the amount of $688.50. The district court also denied defendants' motions for judgment notwithstanding the verdict or for a new trial and for a remittitur. Defendants then filed their appeal, and the plaintiff filed her cross-appeal.
 
 II.
 A. Liability of Defendant Corporation
 
 10
 Defendants assert that '[i]n the instant case the ultimate fact to be proved was that the corporation acted in a biased manner toward this Plaintiff because of her race. Since no owner or director of the Corporation ever saw her it must be inferred from the son's conduct. Since he also never saw the Plaintiff it must be inferred from the testimony of the son's wife.' Brief at 7.
 
 
 11
 At the close of evidence, in order to test the sufficiency of the evidence, defendants' counsel made a Rule 50 motion for a directed verdict. Rule 50 of the Federal Rules of Civil Procedure provides that '[a] motion for a directed verdict shall state the specific grounds therefor.' Consistent with this requirement, defendants asserted that 'there [had not] been any testimony whatsoever concerning [Randy Roe] in this case.' App. at 198. However, defendants did not, so far as we can find on the record, assert an absence of evidence as to the liability of the Corporation. Having failed to assert the absence of the Corporation's liability, defendants cannot now raise the issue on appeal. See In re White Motor Corporation, 731 F.2d 372, 375 (6th Cir. 1984); and 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2533.
 
 
 12
 B. Testimony of White 'Tester'
 
 
 13
 Defendants next argue that the district court erred when it permitted the testimony of a white 'tester,' when a black 'tester' was not presented to testify. Defendants' argument on this issue is made in two parts. First, it is asserted that the testimony was improper as a matter of evidentiary law. Defendants, however, cite absolutely no authority as to what evidentiary rules were breached by the admission of this testimony, and we know of none.
 
 
 14
 Defendants' second argument on this issue is that the testimony of white 'testers' without testimony from black 'testers' violated their right to equal protection of the laws. Once again, since the 'error' was not brought to the district court's attention, it need not be addressed on appeal. Moreover, the Equal Protection Clause 'guarantees that similar individuals will be dealt with in a similar manner by the government.' J. Nowak, R. Rotunda, & J. Young, Constitutional Law 586 (2d. ed. 1983). Assuming the requisite 'state action' is present in this civil case, we know of no right embodied in the Constitution (either in the Equal Protection Clause or elsewhere) which requires that the government aid an opponent in presenting its defense. Obviously, had defendants deemed the black 'tester's' testimony worthy of presentation, they could have called her to the stand. The fact that both parties chose not to call her as a witness does not implicate constitutional rights.
 
 C. Attorneys' Fees
 
 15
 On the day judgment was entered in this case, plaintiff filed a motion for attorneys' fees and costs. On December 19, 1984, interrogatories were filed with the district court which showed that plaintiff's counsel had agreed to accept an hourly rate of $45.00 for his services. Plaintiff's agreement was with the Toledo Fair Housing Center and included a promise to return these fees if the court awarded attorneys' fees. On January 4, 1985, a hearing on the issue was held. During this hearing an attorney testified that in light of plaintiff counsel's experience and speciality in the field, an hourly rate of $100.00 for out-of-court services and $125.00 for incourt services was reasonable. In its Memorandum and Order filed January 8, 1985, the district court, relying on Northcross v. Board of Education of Memphis City Schools, 611 F.2d 624 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980), awarded attorney fees under 42 U.S.C. Sec. 1988 in the amount of $100.00 per hour for out-of-court services and $125.00 per hour for incourt services.
 
 
 16
 On appeal defendants argue that since the $45.00 hourly fee had already been established, the 'reasonable fee' standard should not be applied. We disagree. Although the rate established between plaintiff's counsel and the Toledo Fair Housing Center may be probative of the fair market value of these services, it certainly is not dispositive.
 
 
 17
 Defendants next assert that requiring them to pay the prevailing rate, while a government agency is permitted to contract the same services for a lower rate, violates the Equal Protection Clause. Again, we disagree.
 
 
 18
 Plaintiff's counsel's agreement to accept a lower than prevailing rate is, of course, a matter of private contract. The district court's decision at issue, however, was based entirely on 42 U.S.C. Sec. 1988. Section 1988 permits prevailing parties to recover reasonable attorney fees from any defendant, government or otherwise. Thus, section 1988 makes no classification, and, therefore, the court award of attorneys' fees under that section does not violate the Equal Protection Clause.
 
 D. Cross-Appeal
 
 19
 In her cross-appeal, plaintiff challenges the district court's exclusion of certain expert witness testimony proferred at trial. Specifically, plaintiff proffered testimony which she argues would have aided the jury in determining whether race was a factor in defendants' treatment of the plaintiff. Since the jury, by returning a verdict for plaintiff, obviously found that race was a factor, and since we affirm the judgment based on that verdict, the issue raised in plaintiff's cross-appeal is moot.
 
 E. Attorneys' Fees on Appeal
 
 20
 Plaintiff also requests that this court remand this case to the district court for further assessment of attorneys' fees and costs for this appeal. This court has discretionary power to award costs and attorneys' fees arising from an appeal pursuant to Rule 39 of the Federal Rules of Appellate Procedure. However, as plaintiff suggests, the proper court to set the attorneys' fees in this case is the district court. See, e.g., Kelley v. Metropolitan County Board of Education, 773 F.2d 677 (6th Cir. 1985) (en banc). Accordingly, the case is REMANDED to the district court for that purpose.
 
 III.
 
 21
 For the reasons stated above, the judgment of the district court is AFFIRMED, and the case is REMANDED to the district court for the award of reasonable attorneys' fees to plaintiff, the prevailing party, for services rendered in connection with this appeal.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., Judge, United States District Court for the Eastern District of Kentucky, sitting by designation